HENRY P. HARRIS, administrator, plaintiff in error, vs. WILLIAM A. SEALS AND WIFE, defendant in error.

The next of kin of an intestate, divided out his whole estate among themselves, according to the rule prescribed by the statute of distributions. Afterwards, an administrator was appointed. He failed to make any returns of any sort, to the Court of Ordinary. One of the heirs applied to that Court, to have him removed, for this failure.

*Held*, That if there was no debts, the division by the heirs, was a good administration of the whole estate, although such division was the act of executors *de son tort;* and therefore that there was no estate of the intestate left, about which, any return could be made; and, consequently, that the failure of the administrator, to make any return, was not a sufficient cause to authorize his removal.

Petition from Warren. Tried before Judge THOMAS, at October Term, 1859.

The facts of this case and the points adjudicated will be sufficiently understood, from the following opinion of the Court, together with the head note made out by the Judge delivering said opinion.

TOOMBS; and POTTLE, for plaintiff in error.

WASDEN & NELMS, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

The charge of the Court below, amounts as we think, to this; that if the administrator, Henry P. Harris, had made no returns of any sort, he ought to be removed from the administration, although it might be true, that at the time when he was appointed administrator, there were no debts against his intestate Nathan Harris, and the whole estate of the said Nathan, had been divided out, by his heirs among themselves, in the proportions prescribed by the statute of distributions.

If the heirs divided out the estate in this manner, they in doing so, became executors *de son tort.* And, in Coulter's case, it is laid down, "that all lawful acts which an executor *de son tort* doth, are good." 1 *Wms. ex'ors,* 145. And all acts that are acts which a regular administrator, if one existed, would be bound to do, are, we think, acts that are "lawful," when done by an executor *de son tort.* In the case in which there are no debts, the regular administrator, if there is one, is bound to divide out the estate, among the heirs or next of kin, according to the statute of distributions. Therefore, if in that case, an executor *de son tort,* divides out the estate, in that way, the act will be good, the division will stand. In a word, the act will amount to a valid administration of the estate in full. Consequently, should a regular administrator be afterwards appointed, there will be no estate for him to administer; nothing which he can get into his possession, because the heirs will have the right to insist on the title, they acquired by the division, as a bar to any suit for the assets, brought by him against them.

It follows, that if, in the present case, there were no debts of the intestate, Nathan Harris, the division made by the heirs, among themselves, was valid, and nothing was left for Henry P. Harris to administer; nothing was left which he could in any manner get into his hands, as assets; the estate was fully administered, as much so, as it would have been, had the division been made by a regular administrator.

Now, when the case is such as this, is the administrator bound to make any returns to the Court of Ordinary? If he is, the charge was probably right; if he is not, the charge was wrong.

The answer to this question depends on the import of our statutes, relating to administrator's returns. The latest of these, is the statute of 1810. (*Cobb*, 316.) It declares, that "It shall be the duty of all guardians, executors, and administrators, to render a full and correct account of the state and condition of all such estates as they may severally have in their possession, to the Inferior Court," "which account shall contain a statement on oath, of the transactions of the estate, to the last day of December preceding." According to this, the return must contain an account of the "*estate.*" But if there is no estate, there can be no account of an estate; and, consequently, there can be no return containing any account of an estate. The case is one to which the statute does not extend.

What has been said of this statute, may in like manner be said of the statute of 1764, requiring a return to be made of the inventory and appraisement. There can be no inventory, no appraisement, where there is nothing to inventory, nothing to appraise. And if there can be no inventory, no appraisement, there can be no return of one.

These statutes, then, do not require the administrator to make any return, in the case in which, there is nothing to administer. Consequently, they did not require Henry P. Harris to make any return as the administrator of Nathan Harris's estate.

The proceeding for the removal of Henry P. Harris, was under the Act of 1821, (*Cobb*, 321,) which empowers the Court of Ordinary, to revoke an administration, in the case in which, the administrator "shall fail to make returns within the terms prescribed by law, particularly, where no inventory shall have been made and returned, in terms of the law."

The case in which the power to revoke, is given by this

statute, is the case in which there is a failure to make re-
turns in the terms prescribed by law, that is to say, in the
terms of the two first mentioned statutes. But, as we have
seen, the terms of those statutes do not prescribe, that any
return shall be made in the case in which, there is no estate,
and therefore, nothing about which a return can be made.
A failure to make returns in that case, is, therefore not a fail-
ure to make returns in the terms prescribed by law. Con-
sequently, such a·failure, is not a failure as to which, the
power to revoke given by this Act of 1821, applies.

We think then, that the charge was erroneous; we think,
that if there were no debts, and the heirs divided out the
whole estate among themselves, according to the rule pre-
scribed by the statute of distribution, before Henry P. Harris
was appointed administrator, he was not bound to make any
return in respect to the estate, or in respect to his adminis-
tration, unless specially required to do so, by the Ordinary;
and, consequently, we think, that his failure to make any
return, was not a sufficient cause to authorize a charge to
the jury, that they ought to revoke the administration.

This covers all the questions in the case, but one—the ques-
tion, whether the Court was right in allowing the witness,
Castleberry, to testify as to what was the meaning of the re-
ceipt given by Seals to Mrs. Rhoda Harris.

This is a question which was argued, not at all on one
side, and very little on the other; and as it is a question of
considerable practical importance, and as we have to grant a
new trial any way, we think it best not to decide it. It will
not be improper, however, to say, that we incline to think,
that the Court below decided the question right.

New trial granted.

Judge STEPHENS having been formerly of counsel in this case, did not pre-
side.