Davie *vs.* McDaniel.

WILLIAM H. DAVIE, plaintiff in error *vs.* MARION McDANIEL, defendant in error.

1. Courts of Ordinary are Courts of original, exclusive and general jurisdiction of the sale and disposition of the real property belonging to, and the distribution of, deceased persons' estates.

2. The order of the Court of Ordinary granting leave to an administrator to sell the lands belonging to the estate he represents is his authority for so doing. The authority being shown, the law " presumes the Court of Ordinary required all the law requires to have been done, before granting the order to sell, and we will not go behind that judgment:" 4 Georgia, 154, WARNER, J., delivering the opinion. "The order to sell being a judgment of a Court of competent jurisdiction imports, legally, a necessity for the sale, and such judgment cannot be attacked and set aside collaterally. It is not only leave to sell, but it is a judgment of the Court, that such sale will be for the benefit of the heirs and creditors of the estate. In favor of this judgment we are to presume the Court did its duty:" 7 Georgia, 562, NESBIT, J.

3. An order " to sell the lands belonging to the estate " of the deceased is not void because it does not specify more definitely the lands ordered to be sold: 4 Georgia, 152; Code, section 4, paragraph 6. Such an order need contain nothing more than leave to sell, and a description of the land. Section 4044 of the Code does not apply to it, but only to those cases where a copy of the application to the Ordinary, together with notice of the time of hearing is required by law, or in the judgment of the Ordinary, to be served by the sheriff, or some lawful officer, upon the party or parties to be notified.

4. A recital in an administrator's deed of a compliance with all the requisites of the law necessary to be done after the order of sale is granted, is *prima facie* evidence that those requisites were complied with: 4 Georgia, 155-6.

5. A failure of a purchaser at administrator's sale to record his deed within twelve months from its date, does not postpone his rights to those of a judgment creditor who obtains judgment before record.

6. Purchasers at administrator's sales are not responsible for any dereliction of duty on the part of the administrator, provided there is an apparently substantial compliance with the requirements of the law upon the subject of administrator's sales, and no bad faith on the part of the purchaser.

7. We find no error in the verdict of the jury.

WARNER, C. J., dissented.

Administrator's sale. Authority to sell. Jurisdiction. Practice in Court of Ordinary. Recitals in deed. Presumptions. Record of deed. Before Judge GIBSON. Columbia Superior Court. May Term, 1872.

William H. Davie obtained judgment on July 3d, 1866, against Thomas A. Blanchard as administrator of Uriah Blanchard, deceased, upon a note of the intestate. The execution based upon this judgment was levied upon a tract of land owned by Uriah Blanchard at his death, to which a claim was interposed by Marion McDaniel.

It appeared from the evidence that Thomas A. Blanchard qualified as administrator on October 7th, 1861; that on August 12th, 1863, he published notice of an application to sell the lands of his intestate as follows, to-wit:

"NOTICE.

" Sixty days after date application will be made to the Court of Ordinary of Columbia county for leave to sell the lands belonging to the estate of Uriah Blanchard, deceased.

[Signed]          " THOMAS A. BLANCHARD,
                              "Administrator."

That upon the aforesaid notice, the Court of Ordinary passed the following order, to-wit:

"COLUMBIA COUNTY, COURT OF ORDINARY,
          "At a Regular Term, October 5th, 1863.

"The application of Thomas A. Blanchard, administrator of Uriah Blanchard, to sell the lands belonging to the estate of said Uriah Blanchard, having been published according to law, and no one coming forward and objecting: It is ordered, that Thomas A. Blanchard, administrator, have leave to sell the lands belonging to the estate of Uriah Blanchard, deceased.     [Signed]   "WILLIAM W. SHIELDS, Ordinary."

That upon said order the administrator published the following advertisement, to-wit:

"ADMINISTRATOR'S SALE.

" By virtue of an order from the Court of Ordinary of Columbia county, will be sold on the first Tuesday in December next, before the Court-house at Appling, in said county, between the legal hours of sale, the tract of land belonging to the estate of Uriah Blanchard, late of said county, deceased,

Davie *vs.* McDaniel.

said tract of land lying in said county, containing sixteen hundred acres, more or less, sold for the benefit of the heirs and creditors of said deceased. Terms on day of sale. October 13th, 1863.    [Signed]

> "Thomas A. Blanchard,
> "Administrator."

That on December 1st, 1863, the land was sold for Confederate money—terms, two-thirds cash, one-third at twelve months—to Marion McDaniel, who is a brother-in-law of Blanchard, the administrator; that the deed to McDaniel was not made until January 1st, 1864; that the property was bid off for $15,000 00; that on October 10th, 1864, McDaniel sold to Blanchard one thousand acres of said land for $7,500 00.

The jury found the land not subject to the execution. Whereupon plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the Court allowed the order of the Court of Ordinary of Columbia county, of October 5th, 1863, to go to the jury as evidence, the same being void upon its face.

2d. Because the Court allowed to go to the jury as evidence, against a judgment creditor of the estate of Uriah Blanchard, the deed from the administrator, dated January 1st, 1864.

3d. Because the verdict was contrary to law.

4th. Because the verdict was decidedly and strongly against the weight of evidence.

5th. Because the Court refused to charge the jury as requested by plaintiff, "that the order of the Court of Ordinary, under which the sale purports to have been made is void, because it specifies no reasons for the application, or definite description of the land," and said "he left it for them to determine the definiteness of the description."

6th. Because the Court refused to charge the jury as requested by the plaintiff, "that a sale by an administrator in December, 1863, of real estate for Confederate money when he had funds in hand from the sale of perishable property, which creditors refused, was void," and added, "that while

true as to the administrator, it was not as to innocent purchasers."

7th. Because the jury found contrary to the charge of the Court, requested by plaintiff's attorney, "that if the jury believe from the evidence that it was intended that claimant should buy the land with the understanding that the administrator should receive any portion of it, it is void as against creditors."

8th. Because the Court refused to charge as requested by plaintiff's attorney, "that a purchaser at an administrator's sale who fails to record his deed within twelve months from the date, is postponed to the rights of a judgment creditor who obtains judgment before record."

9th. Because the Court charged the jury, in refusing one of claimant's requests, "that the Court of Ordinary was a Court of general jurisdiction, and all its acts ought to be received as valid unless set aside."

10th. Because the Court charged the jury as requested by claimant's attorney, "that while it is necessary for the petition of the administrator to the Ordinary, praying leave to sell land, to set forth the reasons of such application, it is not necessary to recite said reasons in the order granted to the administrator to sell land, and the omission of such recital in said order cannot affect the title of a *bona fide* purchaser, for value, of said land at the sale thereof, had in pursuance of said order."

The motion for a new trial was overruled by the Court, and plaintiff excepted and assigns said ruling as error.

CHARLES H. SHOCKLEY; FRANK H. MILLER, for plaintiff in error.

1st. A sale by an administrator, according to law, divests the title of the deceased: 14 Georgia, 315; Sims *vs.* Ferrill, decided May 7, 1872; 24 Georgia, 578. But all prerequisites must be complied with: 4 Georgia, 148; 8 Georgia, 236.

2d. Prior to the Code, the words "all the land," in an order of the Court of Ordinary, authorized a sale of any: 4

Davie *vs.* McDaniel.

Georgia, 152. No reasons were required to be put in the order of sale: 30 Georgia, 961. And the presumption from granting it was, that the administrator was legally appointed.

3d. Under the Code all matters showing jurisdiction must appear on the records of the Court of Ordinary: Fischesser, *vs.* Thompson, decided April 9, 1872.

4th. A party claiming under administrator's sale must show the order of Court: 4 Georgia, 148.

5th. There was no written petition filed for leave to sell, (Code, 4043,) and no reasons given for application: Code, 2518.

6th. The published notice failed to describe the land; or even say all the land was not published two months, and the order of the Ordinary specifies nothing but the publication of the application, and the granting of leave to sell the lands belonging to the estate. It also contained no description of the land or reason for the sale: Code, 2514; 4 Georgia, 152; 16 Georgia, 67; 8 Georgia, 236; 26 Georgia, 149.

7th. The advertisement of sale failed to specify anything more than a tract of sixteen hundred acres, in Columbia county: Code, 2519.

8th. Returns of the terms, time and proceeds of the sale, have never been made to the Court of Ordinary: Code, 2528; which throws upon him or those claiming under him, with notice, the burden of proof; 24 Georgia, 558.

9th. A void sale by an administrator passes no title: 10 Georgia, 361; 1 Kelly, 324.

10th. The statutes of limitation only run in favor of one who purchased from the administrator personally: 3 Georgia, 256, 263; or who has prescriptive title for seven years, without any fraud or notice thereof: Code, 2641.

11th. The reference to the jury to determine whether the land was definitely described in the order, was error, as questions of law should be determined by the Court.

12th. The facts show that McDaniel was simply the agent of the administrator, in making the purchase of the land, and it should be set aside: 22 Georgia, 637.

13th. The sale of the land, December 1st, 1873, for Confederate money, under an order of Court, which gave no such authority, and upon terms fixed at the sale, was void, especially as it appeared that claimant was told by the administrator, prior to the sale, he had enough Confederate money from the sale of personal property, to pay the debts, and there was not sufficient proof that he acted as a prudent man would have done: 39 Georgia, 72, 96, 573.

14th. The title to land does not pass until the land is paid for.

15th. The deed not having been recorded, it was incumbent on claimant to show when it was delivered: 38 Georgia, 597.

16th. The facts show a combination between the defendant and claimant, who are heirs, to defraud the creditors, which cannot be allowed: 22 Georgia, 590.

17th. There were sufficient funds from the sale of the personal property to pay the debts of the estate, at the time the order of sale was granted, it therefore must have been for distribution only, and does not divest the title of the deceased, as against the creditors: Carhart vs. Vance, decided August 6, 1872.

W. D. Tutt; Reese & Reese, for defendant.

Montgomery, Judge.

1. That Courts of Ordinary are Courts of original, exclusive and general jurisdiction of the sale and disposition of the real property belonging to, and the distribution of, deceased persons' estates, is provided in totidem verbis, by the Code, section 366. And to the same effect is the Act of 1856, (Acts of 1855-6, page 147,) which first made them Courts of general jurisdiction, which Act, it may be remarked, was passed in response to a call for just such an Act made by Judge Lumpkin, in Tucker vs. Harris, 13 Georgia, 1, and to remedy the evils found to result from the decisions of this Court holding the Court of Ordinary a Court of limited jurisdiction. That

Davie *vs.* McDaniel.

Act declares " that all Courts of law and equity in this State, when determining on any judgment or order which the several Courts of Ordinary in this State have passed or made, or may hereafter pass or make, as to testate and intestate estates, shall hold said Courts of Ordinary to be Courts of general jurisdiction and not Courts of limited jurisdiction." The Code nowhere repeals this Act, in terms, nor is it obvious to my mind wherein any of its provisions are inconsistent with it.

2. Where the Court of Ordinary has passed an order in reference to a subject matter over which it has jurisdiction, this Court has repeatedly held that it will not go behind the judgment to see if everything was done in accordance with law, but will presume it was; especially will the presumption be made in favor of the judgment when attacked collaterally, as in the case at bar. " The legal presumption is, that the Court had sufficient evidence to warrant it in passing the order * * * the order being passed by a Court of competent jurisdiction, and acting within the sphere of its authority, its proceedings cannot be attacked and set aside in this indirect manner :" *Stell, guardian, vs. Glass,* 1 *Kelly,* 486. That was a bill filed by a ward against a guardian for account and an attempt to attack an order granted him by the Ordinary to invest his ward's funds in land, under the Act of 1829. In *Clements vs. Henderson,* 4 *Georgia,* 148, (an ejectment,) defendant offered an administrator's deed in evidence. " To the admission of which deed in evidence plaintiff's counsel objected, because ' the deed and other evidence produced by the defendant was not evidence that the land had been advertised and the other requisites of the statute in such case made and provided, had been complied with by the administrators before making the deed.'" Judge Warner, in delivering the opinion of the Court, after calling attention very emphatically in italicized letters to the proviso of the statute, that it must be made " fully and plainly to appear that the sale will be for the benefit of the heirs and creditors," before the Ordinary shall grant the order, says, " the authority to make the sale (the order) is shown, and we presume the Court of Ordinary

Davie *vs.* McDaniel.

required all the law requires to have been done, before granting the order to sell, and we shall not go behind that judgment." At this time, it will be remembered, the Court of Ordinary was held by this Court to be a Court of limited jurisdiction. In *McDade vs. Burch,* 7 *Georgia,* 559, Judge Nisbet says such an order " is not only leave to sell, but is a *judgment* of the Court. In favor of this judgment, we are to presume that the Court did its duty ; that notice of the application was given as the statute directs, and that it plainly and fully was made to appear that the sale would be for the benefit of the heirs and creditors." If we are to presume that the statute was complied with in favor of a judgment of a Court of limited jurisdiction, (for the Court of Ordinary was not yet held or enacted to be a Court of general jurisdiction) it would seem to follow *a fortiori* that we should do so in favor of the judgment of a Court of general jurisdiction. The rule, is, and has been, at least since the days of Charles II.,' " that nothing shall be intended to be out of the jurisdiction of a Superior Court, (*i. e.* a Court of general jurisdiction,) but that which specially appears to be so ; and, on the contrary, nothing shall be intended to be within the jurisdiction of an Inferior Court (one of limited jurisdiction) but that which is so expressly alleged :" *Peacock vs. Bell and Kendal* 1 *Sanders' Reports,* 73. In *Tucker vs. Harris,* 13 *Georgia,* 1, the point seems for the first time to have been made that the order of the Ordinary granting leave to an administrator to sell land did not show on its face "that it was made fully and plainly to appear to said Court that said contemplated sale was for the benefit of the heirs and creditors of said estate, and that in the absence of a recital of these facts in the order the Court would not presume that it was made to appear by evidence to said Court of Ordinary that the sale was for the above object." That also was an ejectment, and the usual attack made on one of the links in the chain of title of one of the parties litigant. The Court make the accustomed presumption in favor of the jurisdiction, and say further, " if the judgments of the Ordinary, having jurisdiction over the sub-

ject matter, be erroneous or irregular, like all other judg-
ments, they may be attacked by a direct proceeding in the
Court where they were rendered, and set aside or corrected.
Nevertheless, rights acquired under such judgments, before
they are displaced, will be protected." Judge Lumpkin in that
case quotes, with approval, the case of *Duval's heirs vs. Mc-
Losky*, 1 *Alabama Reports, new series*, 708, where the precise
point now under discussion arose, to-wit: whether it was nec-
essary that the record of Probate Court should show the peti-
tion of the administrator to the Ordinary for leave to sell
land, required by the statute of Alabama. The Court de-
cide "that the order for sale of the real estate could not be
considered invalid, because the record did not contain the pe-
tition filed by the administratrix, and that its decree for a sale
could not be collaterally impeached by the omission to desig-
nate the heirs by name in the petition or elsewhere in the re-
cord, or by the direction of the citation to the guardian in-
stead of the heirs. That though it may not appear *in totidem
verbis* from the decree of the County Court that it was ren-
dered at a regular or adjourned term, if the contrary does not
appear it will be taken to have been rendered in conformity
with the statute." And all these positions were reaffirmed in
*Duval's heirs vs. The P. and M Bank et al.*, 10 *Alabama Re-
ports, new series*, 636. Judge Lumpkin goes on to say, "by
recurring to the Alabama statute of 1822, it will be discovered
that it requires that the executor or administrator '*shall file*' a
petition in open Court, as the initiatory step towards obtain-
ing an order or decree for the sale of the real estate of their
testator or intestate. And yet the Court say in the case re-
fered to in 1*st Alabama*, that if the Court goes on to render
its decree, it cannot be intended from the *absence* of such a
paper, merely, that it was never filed ; but that the intend-
ment most rational would be that it was lost after the rendi-
tion of the order." This case from Alabama is, upon this
point, not analagous to, but identical with the case at bar. In
one word, the case of *Tucker vs. Harris* decides, after elabo-
rate consideration of the question by Judge Lumpkin, that

Davie *vs.* McDaniel.

where the Court of Ordinary has jurisdiction of the subject matter, the record must show affirmatively those facts which ousts the Court of the jurisdiction, and the attack upon the judgment must be made directly in the Court which rendered it by proceedings instituted for that purpose: See page 16. He adds, "if this protection be denied to these judgments of the Court of Ordinary, you lay a train of gunpowder through the whole State, and such a decision would be the signal to set fire to it; for nothing has been more irregular than the practice of these Courts generally." Whether the rule be as broad as laid down by Judge Lumpkin, to-wit: that though the facts, ousting the jurisdiction, appear affirmatively on the record, yet the judgment cannot be collaterally attacked, it is not necessary to stop to inquire. In the present case no such facts appear. It is true that the case of *Tucker vs. Harris* was decided by only two Judges. Judge Warner having been of counsel, did not sit in the case; but, as we learn from a note of the reporter, "after the delivering of the opinion by his associates, he expressed from the Bench his hearty concurrence therein." Shortly after this decision the Court reversed its former rulings that the Court of Ordinary was a Court of limited jurisdiction, and held it to be a Court of general jurisdiction: 14 *Georgia*, 27; and shortly thereafter, the Act of 1856 was passed, since which time this Court has uniformly held that, being a Court of general jurisdiction, every presumption will be made in favor of its judgments: 24 *Georgia*, 245. But conceding the Court of Ordinary to be a Court of limited jurisdiction, its judgments, where it has jurisdiction of the subject matter, cannot be collaterally attacked for matter not appearing on the face of the record, which would oust the jurisdiction, "such proceedings (to sell land) are *in rem* against the estate, not *in personam*, and they bind all those claiming under the testator or intestate; and even divest the lien of a judgment, and as such they are binding on the land sold like the condemnation of a Court of Exchequer or Admiralty on goods. In support of these sales by Probate Courts, irregularities are to be overlooked; purchasers should not be

Davie *vs.* McDaniel.

affected by the unskillfulness or negligence of the proper offi-
cers Cowan and Hill's notes to Phil. Ev., Part II., note 42,
referring to 11 Serg. and R., 422, 429, 430; 4 Dall., 119.
Again from the same note, quoting Duncan, Judge, "a judg-
ment, decree, sentence or order, passed by a Court of compe-
tent jurisdiction, which transfers, creates, or changes a title, or
any interest in the estate, real or personal, or which settles or
determines a contested right, or which fixes a duty on one of
the parties litigant, is not only final as to the parties them-
selves and all claiming under them, but furnishes conclusive
evidence to all mankind, that the right, interest, or duty belongs
to the party to whom the Court adjudged it." Once more :
"while the order of a Court of probate directing the execution
of a will is unrevoked, no other Court can declare the will
void or collaterally examine the correctness of the order or
judgment." See Judge Lumpkin's remarks for himself and
his associates on this subject in *Hamilton vs. Moreland,* 15
*Georgia,* 346.

3. But it is said that the order of sale is void because it
does not more definitely describe the land ordered to be sold.
Section 2518 of the Code requires the order to "specify" the
land "as definitely as possible." Conceding that the land is
not so specified, yet it appears to a majority of the Court that
this is only directory to the Ordinary—certainly not an objec-
tion which can be successfully urged in a collateral attack upon
the judgment : *Brooks vs. Rooney,* 11 *Georgia,* 428. There
is no pretence that the citation was not published as usual. The
creditors of the estate were as much parties to the proceeding
to sell as if they had been personally served. The law makes
the published citation service. They (and among them the
present plaintiff in error,) should have appeared and filed their
objections, as provided in section 4045, of the Code, not only
on this ground, but on the other grounds now urged as reasons
why the judgment should be declared void. They have had
their day in Court. That they permitted the judgment to go
against them by default cannot help them now : *McDade vs.
Burch,* 7 *Georgia,* 563 ; *Whitaker vs. Smith,* 33 *Georgia,* 237.

Moreover, section 4, part VI. of the Code provides that " a substantial compliance with any requisition of the Code or laws amendatory thereof, especially on the part of public officers shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the exactment." This would seem to be conclusive upon this point. But it is said the order is void because it does not recite a compliance with the provisions required by law; and to maintain this position section 4044, of the Code is relied on. An examination of that and the preceding section will show two classes of applications to the Ordinary are provided for—first, those where the only notice given to the parties interested is by published citation. Secondly, those where the law requires personal service, or the Ordinary in his discretion orders personal service. In this latter class " a copy of the application, together with a notice of the time of hearing is to be served by the sheriff, or some lawful officer, upon the party or parties to be notified, at least ten days before the hearing and an entry of such service shall be made on the original." Section 4044 then follows and provides that " the order of the Ordinary shall always recite *the names of the persons so notified and* a compliance with the provisions required." The names of what persons so notified and how notified? Evidently the names of those who have been personally served and of none others—for the best of all reasons, it is impossible to know the names of persons, especially creditors, who have been notified by published citation. The order must recite the names and compliance with the provisions required. It must do *both* or neither. An order complying with one-half of the section, and that the latter half, would be as defective as one not complying at all. But I have shown it is impossible to comply with the first clause of the section in cases of notification by published citation. Legislatures do not require impossibilities. It follows that in that class of cases where the notice is by publication it is not necessary that the order of the Ordinary shall conform to section 4044. When the two sections are read together as a whole,

Davie *vs.* McDaniel.

the juxtaposition of the sentences sustain this view. Entertaining these views, I cannot consent to throw the law upon this subject back into the shoals and quick-sands from which it has been supposed, up to this time, the Act of 1856 rescued it. Something was said in the argument, though the point is not made by the bill of exceptions, that the record shows that the publication of the intended application was not made for two months as then required by law, the advertisement being dated August 12th and the order passed October 5th. The truth is the advertisement, as it appears in the record, is dated August 12th, 1860; the order was passed October 5th, 1863. This date of the advertisement is probably a clerical error. Conceding it to be, the reply to the argument is that the law only requires publication once every two weeks for two months— not publication for two months. The first publication appears within the first two weeks of the month of August, leaving time for another in August and two more in September, and the order recites that the application was "published according to law:" *Brown et al. vs. Redwyne et al.*, 16 *Georgia*, 76.

The objection made to the order was, that it was void on its face, not that the application for it had not been published long enough to authorize the Ordinary to grant it. This point, however, is not made by the record, and nothing herein said is intended to decide it.

4. The fourth principle announced by the Court is sustained by Code, section 2520, and by 4 *Georgia*, 155-6.

5. We do not see how a failure to record a deed from an administrator can affect a creditor of the estate who was such at the time of the sale.

6. That it is sufficient for a *bona fide* purchaser at administrator's sale to see that the administrator is apparently proceeding according to the forms of law. See *Neal vs. Patten*, 40 *Georgia*, 363.

Judgment affirmed.

McCay, Judge, concurring :

1. Judgments of the Court of Ordinary of this State, in matters connected with wills and the administration of estates, are judgments of Courts of general jurisdiction, and the necessary jurisdictional facts need not to appear on the face of their proceedings.

2. The rules prescribed by the statute regulating the mode of doing business by the Courts of Ordinary, ought always to be conformed to, and if they be not conformed to, the judgments are irregular, but they are not for that reason void. An irregular judgment cannot be attacked for that reason before another tribunal; to justify such an attack, the judgment must be void.

Warner, Chief Justice, dissenting.

The land in controversy was the property of Uriah Blanchard at the time of his death, and was sold by Thomas Blanchard, his administrator, at administrator's sale, and purchased by McDaniel. The plaintiff, a judgment creditor of Uriah Blanchard, levied upon the land as his property, which was claimed by McDaniel, the judgment having been obtained after the death of Uriah Blanchard against his administrator. On the trial of the claim the jury found the land not subject to the execution. The plaintiff made a motion for a new trial, which was overruled, and the plaintiff excepted.

The main question made on the argument before this Court was whether the order of the Ordinary granting leave to sell the land, as set forth in the record, was sufficient, under the law, to divest the title of the heirs of Uriah Blanchard thereto, so as to enable his administrator to convey a legal title to the purchaser thereof at administrator's sale. The order of the Court of Ordinary is in the following words : " At a regular term, October 5th, 1863, the application of Thomas A. Blanchard, administrator of Uriah Blanchard, to sell the

Davie *vs.* McDaniel.

land belonging to the estate of said Uriah Blanchard, having been published according to law, and no one coming forward and objecting : It is ordered, that Thomas A. Blanchard, administrator, have leave to sell the lands belonging to the estate of Uriah Blanchard, deceased." There was no written application made to the Ordinary by the administrator, stating the grounds of the application for leave to sell the land. On the death of Uriah Blanchard the title to the land descended directly to his heirs, subject to be administered by his legal representative for the payment of his debts, and the purposes of distribution: Code, 2220. It is quite clear that the title of the heirs to the land of the intestate could not be divested by the administrator, but for the payment of the debts of the intestate or for the purpose of distribution.

How, and in what manner, does the law prescribe that the administrator shall proceed in order to divest the heirs of the title to the land for the payment of the debts of the intestate or for distribution? The law has conferred upon the Court of Ordinary original, exclusive and general jurisdiction as to the sale and disposition of the real property belonging to, and the distribution of, deceased persons' estates : Code, 366. The law has not only conferred upon that Court jurisdiction over that particular subject matter, but has also specifically declared how, and in what manner, that jurisdiction shall be exercised in regard to that particular subject matter, as will be hereafter shown by reference to the several sections of the Code.

It will be noticed that the order of the Court of Ordinary does not recite, or show upon its face, that it was shown to the Court, that it was necessary for the payment of the debts of the intestate, or for the purposes of distribution, that the land should be sold, and there is no petition in writing made by the administrator to the Court, setting forth the reasons for his application for leave to sell the land, so as to authorize the presumption that there was any evidence before the Court to establish the fact that it was necessary to sell the land for the payment of debts, or for distribution. But it is said that when the order of the Court of Ordinary was offered in evidence in

the Superior Court, that Court was bound to presume that the Court of Ordinary had sufficient evidence before it to authorize the granting the order to sell the land, because the Court of Ordinary is a Court of general jurisdiction. But is the Court of Ordinary a Court of general jurisdiction under the provisions of the Code, as is the Superior Court and similar Courts? Courts of Ordinary have only original, exclusive, and general jurisdiction of certain specified subjects matter, as defined in the 366th section of the Code.

In *Grier vs. McLendon* (7 *Georgia Reports*, 362) this Court held, and decided, that the Courts of Ordinary in this State were Courts of limited jurisdiction, and that the facts necessary to give the Court jurisdiction of the particular subject matter should affirmatively appear on the face of its judgments and proceedings when offered in evidence in any other Court, and such was the uniform rulings of this Court until the passage of the Act of 1856—making Courts of Ordinary Courts of general jurisdiction as to testate and intestate estates. Are Courts of Ordinary in this State Courts of general jurisdiction, in the legal sense of that term, or are they not still Courts of limited jurisdiction? Is not the jurisdiction of Courts of Ordinary limited to testate and intestate estates by the Act of 1856? All that can be claimed under the Act of 1856 is, that the judgments of the Court of Ordinary shall have the same effect as to testate and intestate estates, as the judgments of Courts of general jurisdiction. Subsequent to the enactment of that statute, a different rule prevailed, and the Courts presumed in favor of the judgments of the Court of Ordinary when the facts did not affirmatively appear on the face of its judgments and proceedings. This was considered an evil, a mischief, which required a remedy, and when the Code was adopted by the Legislature, the general jurisdiction of Courts of Ordinary was limited to the particular specified subjects matter enumerated in the 366th section ; and the other sections of the Code expressly declare how, and in what manner, that jurisdiction shall be exercised by the Court of Ordinary in relation to the specified subjects matter of which it has jurisdiction.

Davie *vs.* McDaniel.

The 4043d section declares, that " every application made to the Ordinary for the granting of any order, shall be by petition in writing, stating the grounds of such application and the order sought." The 2518th section declares, that "if at any time it becomes necessary for the payment of the debts of the estate, or for the purposes of distribution, to sell the land of the decedent, the administrator shall, by written petition, apply to the Ordinary for leave to sell, setting forth in the petition the reason for such application; and notice of the same shall be published once every two weeks for two months before the hearing in the gazette in which the county advertisements are published. If no objection is filed, and the Ordinary is satisfied of the truth of the allegations in the petition, an order shall be passed granting the leave to sell, specifying therein the land as definitely as possible." "The 4044th section declares, that "the order of the Ordinary, shall *always recite the compliance with the provisions required."* Now, if these provisions of the Code mean anything, and have the force and effect of a valid law, the Courts should respect and enforce it.

The order of the Ordinary authorizing the sale of land by an administrator for the payment of debts, or for distribution should, by the positive law of the State, recite therein that it has been made to appear that it is necessary for the payment of debts, or for distribution, in order to divest the title of the heirs and convey a good title to the purchaser, for such are the requirements of the law, to authorize the Ordinary to grant an order to sell the land of the intestate. The title of the heirs to the land can only be divested in the manner provided by law, and the purchaser thereof at the administrator's sale can only acquire title to the land in the manner provided by law.

The law requires that before the Ordinary shall grant an order to sell the land, it must be shown that it is necessary for the payment of the debts of the intestate, or for distribution, and that fact must appear in the order of the Ordinary, for the law declares, that the order of the Ordinary shall always recite the compliance with the provisions required, and

not that it shall be left to the Courts to presume a compliance, but that *the order shall always recite a compliance* with the provisions required by the law.   This provision of the Code is a wise one for the protection of the title of the heirs of the intestate, and should be strictly enforced, not only because it is the declared will of the supreme power of the State, but because real estate is becoming every day more important to our people as an element of property.   The Courts have no legal right to presume that the Ordinary has done what the law positively requires shall *affirmatively* appear in the order to be done.   It is not necessary to say, in this case, that the judgment of the Ordinary is void, for want of jurisdiction, all that it is necessary to say is, that the order under the law was not sufficient to divest the title of the heirs and to authorize the administrator to convey a good title to the purchaser of the land at the administrator's sale.

All that the order recites in this case is, that the administrator has *published* his application to sell the land of the intestate according to law; it does not even recite that the administrator has made application to the Ordinary for leave to sell the land by petition in writing, or otherwise.   It does not recite that it was made to appear that it was necessary to sell the land for the payment of debts, or for distribution, the specific provisions required by the law to authorize the administrator to sell it and divest the title of the heirs.   Yet it is said the Courts are bound to presume what the law requires should be affirmatively recited in the order.   Why not presume that the facts necessary to divest the title of the heirs were *not shown* to the Ordinary, especially, when the law requires that the same shall be recited in the order?   Why is not the latter presumption quite as legitimate as the former?   The question is not what was the law relating to this subject prior to the adoption of the Code, but the question is, what is the law now applicable to it since the adoption of the Code?   Construing the different sections of the Code in relation to the subject matter as one law, it is quite apparent, in my judgment, that it was the clear intention of the Legislature that

the title of the heirs to the lands of an intestate should not be divested by the administrator, unless it was made satisfactorily to appear to the Ordinary that a sale of the land was necessary either for the payment of debts, or for distribution, and to guard against fraud and collusion on the part of the administrator with others, it was expressly provided that he should make his application in writing, as provided in the 2518th section, and that the Ordinary should recite in the order granting leave to sell ·that there had been a compliance with the law by the administrator, to authorize such sale, as required by the 4044th section, and this is the more apparent from the fact that the Ordinary is required to keep a record of the proceedings and orders, as provided in sections 4046, 4047. The Legislature did not intend that so important a matter as divesting the title of heirs to their land should depend on the *presumptions* of the Courts, but have required that the facts necessary to authorize a sale of the land by an administrator shall *affirmatively* appear and be recited in the order of the Ordinary granting leave to sell the land. In other words, the Legislature has required that to be done in relation to the orders and judgments of the Courts of Ordinary in this State since the adoption of the Code, which the common law required to be done when Courts of Ordinary were held to be Courts of limited jurisdiction.

If the positive requirements of the Code are to be understood·as an expression of the intention of the Legislature in regard to this question, it is not to be left to the presumption of the Courts, whether the facts necessary to authorize a sale of the intestate's land by the administrator had been shown to the Ordinary by the production of the mere order alone without more, but that the order shall recite upon its face the fact that it had been shown to the Ordinary that it was necessary for the payment of debts, or for the purpose of distribution, that the land should be sold, otherwise the Ordinary had no authority, under the law, to grant the order to the administrator to sell the land, and his authority to grant it should appear on the face of the order, for the simple reason

that *the law requires it*. Purchasers at administrators' sales are bound to know the law as well as other people, and it is no hardship to require them to look to the administrator's authority to sell the land of his intestate and see whether it is such as the law requires. The loose practice in the Courts of Ordinary in granting orders to administrators for the sale of the lands of their intestates, the Legislature intended to remedy and prohibit; but so long as the Courts *ignore* that intention, and *presume* that to have been done which, the Code positively requires shall affirmatively appear on the face of the proceedings and order to be done, there is no prospect of any reformation in relation to that matter, and thus a very wise provision of the law will be defeated, and the title of the heirs to the lands of their deceased ancestor will depend on the presumptions of the Courts, instead of on a compliance with the positive requirements of the law enacted for their protection. In my judgment, the order of the Ordinary, set forth in the record, was not sufficient, under the provisions of the existing laws of this State, to divest the title of the heirs to the land of the intestate so as to authorize the administrator to make a legal sale thereof to the purchaser, and that the land was subject to the execution levied thereon as the property of the intestate. I am, therefore, of the opinion that the judgment of the Court below should be reversed.