SHIPP, administrator, *v.* GIBBS & SPENCE.

1. "I give and bequeath to my beloved wife, Susan Eckles, the house
   and lot known as the Eckles house, where I now live, embracing
   the stables and lot, said lot adjoining Doctor Gibbs and E. Nebbut,
   together with all the household and kitchen furniture thereto
   belonging. I also give to my said wife Susan one thousand dol-
   lars, all of which I give and bequeath to her, my said wife, during
   her natural life. After her decease, it is my will that the prop-
   erty and money which I have here willed to her, or whatever of
   the same so willed that may be in her possession at the time of
   her decease, it is my will that it shall revert back to my estate
   and be equally divided among my three children, J. T. Eckles,
   F. M. Eckles and L. E. Shipp."—*Held,* that the testator's son, J. T.
   Eckles, took a vested remainder, as tenant in common with the
   other two children, in the specific real estate here mentioned,
   and that his undivided one third interest was subject to levy and
   sale as his property before the death of the tenant for life. *Held,*
   also, that the testator having been dead more than ten years when
   the sale took place, the assent of the executrix, who was the ten-
   ant for life, may be presumed to this devise in her own favor as such
   tenant and in favor of the remaindermen. *Held,* also, that an ad-
   ministrator with a will annexed appointed after her death, which oc-
   curred some time subsequent to the sale, did not have any title as
   against the purchaser at such sale, or any right to administer the
   interest of such purchaser in the premises, or to sell such interest,
   together with the other two undivided thirds, for distribution.
   *Held,* also, that an order of the court of ordinary granting leave to
   sell for distribution and the payment of debts, on a petition of the
   administrator to sell for distribution only, conferred no power on
   the administrator to make sale of an interest to which he had no
   title, and which had by the sheriff's sale ceased to belong to the
   person to whom it was devised. *Held,* also, that the purchaser
   was not affected by any equities which arose amongst the orig-
   inal tenants in common, or between the executrix and the one
   whose interest he had purchased at the sheriff's sale, by reason of
   the failure of such one to repay money borrowed from the execu-
   trix or life-tenant.
2. The merits of the whole case being controlled by the foregoing rul-
   ings, and the verdict of the jury being correct, any errors com-
   mitted by the court in the progress of the trial were immaterial.
   December 28, 1891.                    *Judgment affirmed.*

Wills. Estates .Executors and administrators. Title.
Sales. Practice. Before Judge HUTCHINS. Walton
superior court. August term, 1891.

Sterling Eckles left the will quoted in the first headnote. He appointed his wife and one of his sons, Frank M., executrix and executor. The wife qualified as executrix, took possession of the property bequeathed, and remained in possession until her death in 1889. Her co-executor died before her death. In February, 1887, an attachment in favor of Gibbs & Spence against J. T. Eckles was levied upon one third undivided remainder interest in the house and lot, and the property levied on was sold at sheriff's sale to Gibbs & Spence. In June, 1889, Shipp was appointed administrator *de bonis non* with the will annexed of Sterling Eckles. By petition he asked for leave to sell the property, alleging that the sale was necessary for distribution and alleging no other reason. Upon the petition the court of ordinary granted him leave to sell the realty mentioned for the payment of debts and for distribution. He attempted to sell under this order, and Gibbs and Spence interposed their claim. Upon the trial it appeared that when Susan Eckles died, there were in her possession two notes of J. T. Eckles to her, amounting to a little over $1,000, one made in 1880 and the other in 1886, the first having a credit of $60.40 January 26, 1885, and the other a credit of $25.42 interest to October 20, 1886. From testimony for the administrator it appeared that Susan E. was in possession, either by herself or tenant, of the realty up to her death, that afterwards and up to the time of trial the administrator was in possession, that the consideration of the notes mentioned was the loan by Susan Eckles to J. T. Eckles of the $1,000 mentioned in the will, and that J. T. Eckles is insolvent. The claimants did not contend that they were ever in possession of the premises, but one of them testified that one of the tenants of the property paid to him (witness) some rents after the death of Susan Eckles and after the appointment of the administrator and after the claim

was interposed. A witness had in his hands some notes transferred by J. T. Eckles to his mother, Susan, which witness collected, amounting to some one hundred to one hundred and fifty dollars; paid the money over to Mrs. Eckles' attorney; did not know how or on what consideration Mrs. Eckles held the notes; understood that J. T. owed his mother money; did not know that these notes were held as collaterals for the notes above mentioned; J. T. Eckles sold his mother some land for about $500, witness thought; did not know how she paid him for it.

There was a verdict for claimants. A motion for new trial made by the administrator was overruled, and he excepted.

HENRY D. McDANIEL, for plaintiff in error, cited 32 *Ga.* 696; 39 *Ga.* 381; 58 *Ga.* 334; 65 *Ga.* 571; 69 *Ga.* 314; 57 *Ga.* 211; 59 *Ga.* 718; 79 *Ga.* 430; 48 *Ga.* 596; 54 *Ga.* 602; 47 *Ga.* 195; 68 *Ga.* 735; 65 *Ga.* 274; 63 *Ga.* 649.

McHENRY & WALKER, *contra*, cited Code, §§2483, 2269, 2270, 2695, 2570–2584; 26 *Ga.* 515; 71 *Ga.* 196; 80 *Ga.* 36; 82 *Ga.* 687; 22 *Ga.* 323; 77 *Ga.* 352; 78 *Ga.* 26; 79 *Ga.* 150–180, 430; 54 *Ga.* 602; 75 *Ga.* 448; 86 *Ga.* 185; 55 *Ga.* 12, 359–449; 29 *Ga.* 585; 40 *Ga.* 410; 85 *Ga.* 236; 83 *Ga.* 79; 81 *Ga.* 722–776.