No. 25.—Amos Benton, plaintiff in error, *vs.* Joseph W. Patterson, defendant in *fi. fa.* and Drury Thompson, trustee, claimant and defendant in error.

[1.] P devised the whole of her estate to G, as trustee and testamentary guardian, for the exclusive use of her three daughters, W, A and B, and *their increase, if any,* to be *distributed, &c.;* and in the event of the death of either of the daughters, without issue, her portion of the property to go to the *survivor* or *survivors*—if two, share and share alike—if one, to her exclusively; and should all three die, without increase or issue, G, the trustee and testamentary guardian, is directed to *deliver over* the entire estate to

C E; and he is vested with plenary power to do any way with the property, that, in his wisdom, may seem best: *Held*, that the will did not create an *estate tail*, especially since such estates were long since abolished by law in this State; but the same was an estate for life in the daughters, with remainder in fee to their children or grand children; and that if the daughters died without children or grand children, it was a good limitation over in fee, by way of executory decree, to C E, on failure of increase at the death of the daughters.

Levy and claim, in Bibb Superior Court. Decision at July Term, 1849, by Judge FLOYD.

The facts in this case were agreed upon as follows : A *fi. fa.* (*Amos Benton vs. Jos. W. Patterson*, to July Term, 1849, dated 5th February, 1849,) was levied on certain slaves or their issue, embraced by the will hereafter recited; that Patterson, after said judgment, had intermarried with Virginia C. Wilkinson, and was in possession of said property at the levy, worth $1500; that the wife of Patterson was the daughter of Cecilia Porter, and once the widow of William L. Wilkinson; that the latter died in 1838 or 1839; that his widow remained *sole* until May, 1849, and then married Patterson; that after this marriage, and after the levy, Drury Thompson was appointed trustee for said Virginia and her children; that this is a copy of Cecilia Porter's will :

" GEORGIA, WILKES COUNTY :

"In the name of God, amen: I, Cecilia Porter, of the County and State aforesaid, being at this time in a declining state of health, but of sound disposing mind and memory, do make, constitute and appoint this, my last will and testament, in manner and form following, to wit :

"Item 1. It is my will and desire, that out of my estate all of my just debts be paid.

"Item 2. After the payment of all my just debts, it is my desire, that the remainder of the property, both real and personal, be divided into three equal portions or shares, as near as practicable, to be distributed by my trustee or testamentary guardian, hereinafter appointed, between my three daughters, Virginia Wilkinson, wife of William L. Wilkinson, Frances Wellborn, wife of John G. Wellborn, and Eleanor Walton.

"On account of the danger to which property of legatees, es-

pecially females, is frequently exposed, in consequence of the embarrassment or mismanagement of their husbands, thereby not unfrequently depriving them of support, and leaving them in a helpless and forlorn condition, I have thought it proper to prevent such sad consequences, so far as can be effected by my own precaution, or the kind and faithful agency of friends. To the end, therefore, and for this purpose, I hereby constitute and appoint Augustus H. Gibson, my trusty friend, as trustee or testamentary guardian of my before named daughters, Virginia Wilkinson, Frances Wellborn and Eleanor Walton; reposing in his special trust whatever property may fall to all or each of them after my decease.

"It is farther my will and desire, that my said trustee recover, as early as possible after my death, the entire amount of my estate, and after complying with the requisition to pay my just debts, then manage the remainder as he may deem to the best advantage of my aforesaid three daughters, in order that he may have no trouble with their husbands or others, or with the Court of Ordinary.

"It is farther my will, that my trustee reserve to himself fifty dollars, annually, out of the proceeds of my estate, as a compensation for his trouble and services; and here let it be distinctly explained and understood, that the property thus devised to the trustee and testamentary guardian, is exclusively intended for the use and benefit of my three daughters and their increase, if any. And whereas, I have a claim now pending in the Superior Court of this County, against the guardian of Thomas C. Porter, for a considerable amount, it is my will and desire, that if in the event of the recovery, whatever it may be, be thrown into my general estate, and be distributed as above pointed out.

"Item 3. I hereby constitute and appoint Augustus H. Gibson, the trustee and testamentary guardian aforesaid, executor also of this my last will and testament, relying with full confidence on his worth, and well satisfied that he will not betray his trust—hereby revoking all others by me heretofore made.

"In witness whereof, I have hereunto set my hand and affixed my seal, the 14th day of January, 1830."

To which will there was this codicil:

" GEORGIA, WILKES COUNTY:

"I, Cecilia Porter, of the County and State aforesaid, do publish and declare this codicil to my last will and testament:

"Item. In the event of the death of either of my daughters, mentioned in the preceding and foregoing, without issue, it is my will and desire, that their proportion of the property therein conveyed, revert to and become the property of the survivor or survivors—if two, share and share alike—if one, her's exclusively; and should all three of my daughters depart this life without, it is my will, that the trustee or testamentary guardian, appointed in the foregoing will, deliver over to Caroline Echols, wife of Simeon Echols, the entire amount of the property devised in this my will, to her and her issue, forever. Discretionary power is hereby given to the trustee or testamentary guardian, either to work all the hands jointly upon the plantation whereon I now reside, and divide the proceeds among my children, in just and equal proportions, or to sell the lands and purchase one of cheaper value, if he thinks proper, or at all events to act and do in any manner or way with the property that, in his wisdom, may seem best. This I have inserted in this codicil, in order that he and all concerned may discover that it is my will and intention, that he shall have absolute power and sole control over all and every thing relating to, or in any way appertaining to the provisions of this instrument.

" In witness whereof, &c. 14th January, 1830."

It was farther admitted, that these papers were duly proven and recorded; that plaintiff below claimed that said property levied on was subject; that Judge *Floyd* ruled that the property was *not* subject, and ordered the levies dismissed; whereupon, attorneys for Benton excepted, and assigned for error, that in the case made by said record, said property is subject.

POE & STUBBS, for plaintiff in error.

POWERS, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Are the four negroes levied on subject to be seized and sold as the property of Patterson, the defendant in execution?

The answer to this question depends upon the construction to be put upon the will of Mrs. Cecilia Porter. If the bequest to her daughter, *Mrs. Wilkinson*, (at the time of making the will,) now *Mrs. Patterson*, created an estate tail in these slaves, then, under the Act of 1821, the daughter of the testatrix took an absolute fee, which being held in trust, for her sole and separate use, during her first coverture, vested at the death of Wilkinson, and by virtue of the marital rights, became the property of Patterson, upon her intermarriage with him, and is consequently subject to the *fi. fa.*

The whole will must be considered together, and it will not do to rest the construction upon any particular clause. Looking, then, to the entire instrument, did the testatrix intend to describe a class of persons who should take in succession, from generation to generation, in all coming time, or did she design to bequeath the negroes to her daughter for life, with remainder, at her death, to her children or grand children? If the former purpose is apparent, and that the object of the testatrix was to entail this property upon the lineal descendants of her daughter, then such intention being unlawful, cannot be executed ; but if, on the other hand, the Court should come to the conclusion, that the contrary is true, and that she merely intended to describe the persons who were to take after the death of her daughter, the words of the will will be construed to be words of *purchase* and not of *limitation.*

Four tests have been applied by the Courts, for the purpose of ascertaining the *nature* of the estate intended to be created; and notwithstanding the words of the instrument would, *per se,* be construed into a limitation, yet they will be held to be words of purchase, either where no estate of freehold is given to the ancestor, or where no estate of inheritance is given to the heir, or where a new inheritance is grafted on the words of entail, or, lastly, where explanatory words are superadded.

Passing by the first three, we propose briefly to apply the fourth test to this will. The whole estate of the testatrix is devised to her trusty friend, Augustus H. Gibson, " as trustee and testamentary guardian," and she wishes it distinctly understood, that it is " exclusively intended for the use and benefit of her three daughters, and *their increase, if any.*" Mr. Gibson is appointed *testamentary guardian* as well as trustee. Of whom?

Why, the *children* or *grand children* of the testatrix, born of the three daughters. These are, manifestly, *the increase, if any*, designated in this clause. Again, the testatrix speaks of her property being *distributed*, &c. And I need not remark, that the idea of *distribution* is antagonistic to that of *perpetuity or inalienability*. And then, if either of the three daughters die without issue, her portion of the property is " to go to the *survivor or survivors*—if two, share and share alike—if one, to her exclusively ;" and in the event of all dying without increase or issue, the trustee or testamentary guardian is " *to deliver over the entire estate* to Caroline Echols;" and in conclusion, Mr. Gibson is clothed with plenary powers " to do in any manner with the property that, in his wisdom, may seem best."

It can hardly be believed, that the act to be performed here, by the trustee or testamentary guardian, namely, the delivery over of the property to Mrs. Echols, should all the daughters die without issue or increase, could mean, in the mind of the testatrix, whenever their descendants should become extinct, sooner or later, and without reference to any particular time, or any particular event. On the contrary, we believe the very converse of this proposition is fairly and legitimately deducible from these various superadded words, to wit : that she had reference to the period of the death of her daughters, and to their issue living at that time.

It will be recollected, that the rule in *Shelly's case*, was made to *effectuate* the intention of testators, not to *disappoint* them— that it was established by the *English* Courts, when estates tail were not only lawful but common. It was, therefore, just to infer, in that country, that the testator intended to create such an estate ; but here, if such estates ever did exist, they have certainly been abolished since 1777. *Watkins' Digest*, 15. For myself, I should hold, that whatever technical words are used in the instrument, whenever the devise over is to a person or persons then in life, *as survivor*, that they ought to be interpreted to import a failure of issue at the time of the death of the first devisee, and that they do not mean a general or indefinite failure of issue.

And many of the State adjudications in this country have gone to this extent, rather than adopt an unbending rule which, by implication, would turn an express estate for life, with limitations over in remainder, into a *fee tail*, and thus defeat the intention of

the testator. I will content myself by referring to the case of *Huchison vs. Jackson,* (16 *Johns. Rep.* 382,) because it contains the most thorough examination and elaborate discussion of this whole doctrine that is to be found any where in the books, not excepting even the case of *Perrin and Blake.*

E devised a farm to his son Joseph, his heirs, &c. forever, and another farm to his son Medcef, his heirs, &c. forever, and added, *" it is my will, that if either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor;* and in case of both their deaths, without lawful issue, he gave the property to his brother and sister in England. Joseph died without lawful issue. It was *held* by the *Supreme* Court, and their judgment *affirmed* by the Court of Errors, that the words did not create an *estate tail,* especially since the Statute abolishing entails, but was a good limitation over in fee, by way of executory devise *to the survivor,* on failure of issue *living* at the death of either of the sons.

It will be perceived, that the words in the will of Medcef Eden, the elder, were, *" dying without issue;"* standing, too, without any other words or circumstances of intention; and is distinguishable in this, as well as many other of its features, from the case presented in this record; and still it was considered, that while estates tail are presumed in England, because allowed by Act of Parliament, that fee simples are presumed in this country, because *directed* by law. I repeat, that in view of this difference, the Court held, that there was no rigid, inflexible rule of law to wrest the plain and manifest purpose of the testator to one altogether different from what he intended.

Favoring as we do, the intention of the testatrix—and particularly in a devise of personal property—and gladly taking hold of any words in the will, which will afford a ground for construing the instrument in such a way as will support the devise over, the opinion of this Court is, that it is fairly to be collected, from the language and provisions of this whole will, that Mrs. Porter intended that her daughter should take an estate for life in these slaves, with remainder in fee to her children or grand children, which the record shows are *in esse;* for the claim is interposed in their behalf, as well as on account of their mother.

Let the judgment of the Superior Court, therefore, be affirmed.