BAIRD *et al.* v. BROOKIN.

Where a deed conveyed land to A., as trustee for B. and her children (B. having, at the time of its execution, no children): *Held*, that the children of B., born subsequently to the execution of this deed, took no interest thereunder.

February 23, 1891.

Estates. Deeds. Before Judge MILLER. Bibb superior court. April term, 1890.

Reported in the decision.

BACON & RUTHERFORD and W. M. WIMBERLY, for plaintiffs.

DESSAU & BARTLETT and R. W. PATTERSON, for defendant.

LUMPKIN, Justice.

Maria E. Shivers, by a deed dated December 18th,

1862, in consideration of $2,000, conveyed certain land to Charles H. Baird, trustee for Josephine Baird and her children, "To have and to hold . . to the only proper use, benefit and behoof of him, the said Charles H. Baird, in special trust for the sole and separate use of Josephine Baird and her children, his heirs, executors, etc., in fee simple." At the time this deed was executed, no children had ever been born to Mrs. Baird, but since then she has become the mother of several children. This case was submitted to the judge below upon a construction of this instrument, the question being, whether or not these children of Mrs. Baird, born after the execution of the deed, took any interest thereunder in the property. The court below held that they did not, and in accordance with this opinion, directed a verdict for the defendant. It is conceded that if the court's construction of the deed was right, the verdict was proper; otherwise, it was not.

We are of the opinion that the ruling of the court was correct. This court has already decided, in the case of *Lofton* v. *Murchison et al.*, 80 *Ga.* 391, that "A will, made and probated in the year 1847, by which the testator devised to his daughter certain land, ' to her and her children, free from the disposition of any future husband,' (the daughter then having no children) conveyed to her an absolute fee; and children born to her after the testator's death took no estate under the will by way of remainder or otherwise." The case of *Wiley, Parish & Co.* v. *Smith et al.*, 3 *Ga.* 551, was one where a testator devised property to his executors *in trust* for his son, William Brantley, and his children (William at the time having no children), with devise over to the heirs named in his will upon William dying without having a child or children; and it was held that William took an estate-tail, with remainder to the heirs named in the will, and this, of course, under our statute, made

a fee simple in William, the first taker. A devise to "A's children, their heirs and assigns forever," vests the title to those *in esse* at the death of the testator. *Wood et al.* v. *McGuire*, 15 *Ga.* 203. Upon a deed conveying land to Mills, trustee for Mrs. Mills and her children, in fee simple, held that Mrs. Mills and her children *then in life* took the land as tenants in common, and that it did not go to her during her life, with remainder to her children. *Loyless* v. *Blackshear et al.*, 43 *Ga.* 327. Where a deed was made by A., conveying property to the heirs of B. (the latter then having three children *in esse*), the title passed to those three children, and after-born children of B. took no interest. *Tharp et al.* v. *Yarbrough et al.*, 79 *Ga.* 382.

The case of *Estill* v. *Beers et al.*, 82 *Ga.* 612, was one in which a deed from Gazaway B. Lamar conveyed property to G. de Rosset Lamar, in trust for himself and his three sisters (naming them), the portions of the sisters to be settled upon them, so as not to be responsible for the debts of any husband they might have, "but for the sole use, benefit and advantage of each of these sisters *and their child or children*." At the date of this deed, one of the sisters had one child, and the others had none. In that case, the precise point ruled was that the child in existence when the deed was made took an interest, as tenant in common, with his mother, but Chief Justice BLECKLEY also remarked that "the daughters who had no child or children, took an estate severally to themselves in fee simple." While this remark was *obiter*, it shows the bent of the court's mind at the time, and is now adopted as sound law. The head-note in that case is manifestly incorrect, as even a casual reading of the case will show. In addition to what it contains, it should also be made to recite that the conveyance was to G. de Rosset Lamar in trust for himself and his three sisters, and as to the

latter, for the sole use, etc., "*of them and their child or children.*"

In Wild's case, 6 Coke's Rep. 16 b., the second head-note is as follows: "A devise to B. and to his children, or issues, B. having no issue at the time of the devise, is an estate-tail; otherwise when he has issue at the time"; and these comments are made thereon: "And, therefore, this difference was resolved for good law, that if A. devise his lands to B. and to his children or issues, and he hath not any issue at the time of the devise, that the same is an estate-tail; for the intent of the devisor is manifest and certain that his children or issues should take, and as immediate devisees they cannot take, because they are not *in rerum natura,* and by way of remainder they cannot take, for that was not his intent, for the gift is immediate, therefore there such words shall be taken as words of limitation, *scil.* as much as children or issues of his body; for every child or issue ought to be of the body, and therewith agrees a case, Trin. 4 Eliz., reported by Serjeant Bendloes, where the case was, that one devised land to husband and wife, 'and to the men-children of their bodies begotten,' and it did not appear in the case that they had any issue male at the time of the devise; and therefore it was adjudged that they had an estate-tail, to them and the heirs males of their bodies; but if a man devises land to A. and to his children or issue, and they then have issue of their bodies, there his express intent may take effect, according to the rule of the common law, and no manifest and certain intent appears in the will to the contrary."

Following Wild's case, and citing it as authority, is the case of Byng *v.* Byng, 10 H. of L. Cases, 170, where it was held that "When there is a devise of land to A. B. and his children, and at the time of the devise he has no child, the word 'children' is *prima facie* a word of limitation, and the first taker shall have an

estate-tail." In this case, concurring opinions were delivered by Lord Chancellor Westbury and Lords Cranworth and Kingsdown, all upholding the rule in Wild's case, and reaffirming the doctrine therein stated, as expressed above. See, also, Sweetapple *v.* Bindon, 2 Vernon's Ch. Reps. 536.

The learned counsel who so ably argued this case for the plaintiffs in error undertook to take it out of the rule in Wild's case, on three grounds: (1) because the instrument now under consideration is a deed, and not a will, and for this reason a different rule of construction should be applied; (2) because in the deed from Mrs. Shivers, a trustee is appointed, and the conveyance made to him instead of Mrs. Baird and her children directly, whereby the estate might be preserved till children should be born; and (3) because, as he argued, it was a reasonable inference, from the terms of the deed itself, that the maker intended to include in its benefits the after-born children of Mrs. Baird. Taking these propositions in their order, we will first discuss whether or not it makes any difference that the paper in question is a deed instead of a will. Under our system, we do not think this fact should vary the rule of construction. In the several chapters of our code relating to the creation of estates, it seems immaterial whether those estates are made by will or by deed. I refer especially to section 2250, which treats of gifts or grants such as would, under the common law, create estates-tail, without making any distinction as to whether such estates are created by deed or will. It is true that the deed before us was made a short time before the code went into effect, but our understanding is, that many of the various sections of the code in the chapters above referred to simply embody the spirit of our law as it was understood and enforced before the adoption of the code. In support of this, I

quote from the opinion of Chief Justice LUMPKIN in *Shumate* v. *Williams*, 34 *Ga.* 249 : "The presumption is a fair one, that the code correctly renders the substance of all statutes then [that is, at the time of its adoption] in force, except where modification plainly appears. It would be making a too limited use of this great book to consult it only for the present state of the law, overlooking the fact that while it introduces numerous changes, it is mainly a declaratory exposition, in a concise and systematic form, of the body of laws, common and statute, which the codifiers found already established. One of its prime objects was to clear up obscurities and resolve doubts. It speaks to us of the past, as well as of the present and future; not, it is true in the same imperative voice, but with that mitigated authority which belongs to legislative interpretation, led and directed, in this instance, by the professional ability, both of the codifiers themselves and of the committee of lawyers who, after scrutinizing their work, approved and recommended its adoption."

Another view of this question may be submitted. Children and grandchildren being the natural objects of a testator's affections, it is to be supposed that in the making of his will he usually bears them in mind, and desires them to share in and enjoy his bounty. This is manifest from the large number of wills providing, in one way or another, for the testator's descendants. Deeds are contracts, in the making of which both contracting parties are supposed to take care of themselves; and where a grantee intends to contract for the benefit of his children, as well as of himself, having the same natural desire in their behalf as in case of a testator making a will, and being a party to the instrument, he has the opportunity to secure the end desired by having the deed speak its real purpose plainly and unmistakably. It would seem, then, that

no rule more favorable to the interests of children ought to be allowed in the one case than in the other. We have seen what construction has been uniformly put upon wills containing language like that in the deed before us; and on general principles, we can see no good reason why such deeds should not be similarly treated. Indeed, it will be observed that in several of the cases above cited, the instruments construed were deeds, and yet no distinction was made in any of them because the paper under consideration was a deed, and not a will.

In the second place, we do not see that the interposition of a trustee should change the rule. In the cases above cited from the 3d *Ga.*, the 43d *Ga.*, and the 82d *Ga.*, the titles were put in trustees. The instruments construed in all these cases, were made prior to the passage of the act of 1866, known as the "woman's law," by which the property of married women was vested in them as their separate estates. In the case cited from the 43d, it is fair to presume, and in that cited from the 82d, it plainly appears, that the conveyance of the property to a trustee was for the purpose of protecting it from the marital rights of the husband. The deed now under consideration was made in 1862, and it is quite as reasonable to conclude that the conveyance was made to a trustee in order to protect the property from the marital rights of Mrs. Baird's husband, as that this was done to preserve the estate for the benefit of children yet to be born; and this being true, the presence of the trustee in the deed may as well be accounted for upon the one theory as the other. As Chief Justice BLECKLEY remarked, discussing another question, in the case above cited from the 80th *Ga.*, "When a third thing is equally compatible with either of two others, it affords no reason for inferring one of the two rather than the other." Hence, we con-

clude that a deed of this kind should be treated and construed exactly as if no trustee had been interposed, and the decisions of this court to which we have above referred, seem to justify this conclusion.

In the last place, in reference to the well-settled doctrine that all rules of construction should yield to the manifest intention of the maker, this should only be done when such intention may be plainly and easily gathered from the instrument itself. An examination of the cases in which the courts have sought to follow the intention of the maker of an instrument, without resorting to rules of construction, will show that in almost every instance there were superadded words which plainly indicated what the intention was. In the case of *Toole, adm'r*, v. *Perry*, 80 *Ga.* 681, cited by counsel for the plaintiff in error, it was held that a devise to the testator's daughters and their children would not only include children in life at the death of the testator, but also others born after his death, by the daughter's first husband, and others still by a second husband whom she married after the testator's death. But Justice BLANDFORD, in delivering the opinion, said distinctly that this conclusion was reached by the court because, from the language used in the will itself, it must have been the intention of the testator to include all the children of his daughters, no matter when they might be born ; and this statement is based upon the fact that, in this particular will, the testator referred to the present or any future husbands of his daughters, and declared that the husbands of those under coverture when the will took effect should be the trustees, respectively, of the portions given to their wives and children. In the cases of *Brady et al.* v. *Walters*, 55 *Ga.* 25, and *Boyd et al.* v. *England*, 56 *Ga.* 598, the deeds contained the words, "children born and to be born," and, of course, in these cases, the intention was clear, because it was *plainly expressed*.

So in *The Chess Carley Co.* v. *Purtell,* 74 *Ga.* 467, this court held that the words, "her present heirs," manifestly meant the children of Mrs. Purtell then living, and ruled the case on the idea that the intention was plain.

In the deed from Mrs. Shivers there were no superadded words, or other expressions, to take the case out of the rule in Wild's case. It is simply a plain deed, in the usual form of such deeds, and no more, with nothing in the context outside of the conveying clauses to aid in arriving at the intention of the paper. We think it has been clearly shown that if this paper was a will, there would be no question at all as to the propriety of applying the rule stated; and, as we have undertaken to show that the same rule should be applied to both wills and deeds, it follows that the children of Mrs. Baird, born subsequently to the execution of this deed, could take nothing thereunder, but the fee was absolutely vested in the first taker. The judgment of the court below is therefore                                         *Affirmed.*