## SUMPTER *et al. v.* CARTER.

A testator, who died in 1864, left a will in which, so far as material to this case, he disposed of his estate as follows: "I give, bequeath, and devise to my beloved wife, . . all of my property and effects, . . during her natural life or widowhood, . . and in case of my said beloved wife not intermarrying, then in that event my will is that at her death that my whole estate be then equally divided between my six children, to wit: my five daughters [naming them], and my son [naming him]. My said effects thus going into the hands of my said daughters not to be subject to the control of any husband, but the same to belong to my said daughters and their children. And in case either of my said six children should depart this life without leaving issue, then their part of my estate to be equally divided between my other children, to be controlled in the same way as first above directed." Neither of the testator's children had married when he died, and his widow never married again. *Held:*

1. That the intention of the testator is to be followed, unless clearly in conflict with the law existing at his death ; and this intention is to be ascertained in the light of the whole will, and the attendant circumstances of the testator *;* and where there are divesting clauses, especially of a remainder, they are to operate so as to vest the estate indefeasibly at the earliest possible period of time.

2. That, upon the death of the testator, each of his children took a vested remainder interest, subject to be divested in favor of the testator's other children, as substituted devisees and remaindermen, upon such child dying during the existence of the life-tenancy, without leaving a child who survived the life-tenant. That, the son having died before the life-tenant, leaving children who survived the latter, his remainder share became indefeasible upon the death of such life-tenant. And that, therefore, under a deed executed during the life-tenancy, by which the son conveyed to another all his interest in described realty which belonged to the testator at the time of his death, the grantee, upon the death of the life-tenant, became indefeasibly entitled to the son's remainder share therein.

3. That children of a daughter of the testator, who with her survived the life-tenant, were entitled to share, in common with their mother, in the remainder interest which, upon the death of the testator, vested in the mother, subject, however, to open and let in such children. And that, hence, a deed executed by a daughter of the testator, which conveyed to another all her interest in described realty which belonged to the testator at his death, did not affect the interests therein of her children who were in life when the life-tenant died.

Argued October 9, 1901.— Decided April 1, 1902.

Rehearing denied June 23, 1902.

Equitable petition.    Before Judge Estes.    Hall superior court. July term, 1901.

*Albert & Hughes* and *H. H. Dean,* for plaintiffs, cited Civil Code, §§ 3082, 3102, 3103 ; 80 *Ga.* 681; Id. 374.

*H. H. Perry* and *Howard Thompson,* for defendant.    The six children each took a vested remainder in fee, subject to be defeated if they died without leaving issue; and the plaintiffs, not being in esse at testator's death, took no interest, either as tenants in common or in remainder: 80 *Ga.* 391 – 3; Id. 382 – 9 ; 82 *Ga.* 612; 86 *Ga.* 713 – 16; 107 *Ga.* 105.    The case in 80 *Ga.* 681, is not in point: See 107 *Ga.* 107; 86 *Ga.* 716.    In order for a devise of a remainder to open to let in after-born children up to time of enjoyment, there must be apt words to indicate an intention to postpone full effect of devise; as in 55 *Ga.* 25, and 56 *Ga.* 598.    See 86 *Ga.* 716 ; 69 *Ga.* 485.    The policy of the law and the established rule of construction is to construe the estate in remainder as vesting completely at the testator's death, and to ascertain the persons to

take at that time, and not at the time of taking possession: 66 *Ga.*
364; 29 Am. & Eng. Enc. L. (1st ed.) 447; 2 Jarm. Wills (Rand.
& T.), 406, 407.    The word "children," when there are none in
esse, is a mere word of inheritance: Civil Code, § 3085; 80 *Ga.*
389; Id. 373; 86 *Ga.* 716.    There being nothing in the will to
show intention to limit the children's interest to a life-estate, they
take an absolute estate: 62 *Ga.* 256; 41 *Ga.* 569.    Unless plain
words to contrary are used, will construed to give the property to
those who would be entitled to it under law of distribution: 78
*Ga.* 475.    Provision for division does not postpone vesting: 74
*Ga.* 529; 17 *Ga.* 280.    Nor does direction to sell and divide pro-
ceeds: 79 *Ga.* 430; 82 *Ga.* 687..    Contingencies connected with
life-estate which may affect remainders are conditions subsequent;
and if they never happen, the will is to be construed as if no con-
dition had been mentioned: 71 *Ga.* 203; 107 *Ga.* 43; 68 *Ga.* 370;
29 Am. & Eng. Enc. L. (1st ed.) 447; 9 L. R. A. 213, 215; 3 L.
R. A. 817; 1 L. R. A. 435.    If contingent, the contingency being
as to the event, the devisees could dispose of their interest: 105
*Ga.* 525.    The provision that if any of the children should die with-
out leaving issue, their part should go to the other children, did not
give their children (the plaintiffs) any interest by way of remain-
der.    All having issue, their title became absolute: 33 *Ga.* Supp-
173; 66 *Ga.* 354, 153, 230.    Other citations: 110 *Ga.* 707; 106
*Ga.* 751; 102 *Ga.* 181; 81 *Ga.* 120; 68 *Ga.* 370; 30 *Ga.* 638; 16
*Ga.* 545.

FISH, J.    The will of John M. Carter Sr., who was the grand-
father of the plaintiffs in error, was executed August 26, 1863, and
is, so far as material to this case, as follows:    "I give, bequeath,
and devise to my beloved wife, Amelia Carter, all of my property and
effects, . . during her natural life or widowhood, . . and in case of
my said beloved wife not intermarrying, then in that event my will
is that at her death that my whole estate be then equally divided
between my six children, to wit: my five daughters, Lucinda, Al-
meda, Sarah Elizabeth, Teresa, and Thena Alieva, and my son San-
ders Taylor Carter.    My said effects thus going into the hands of
my said daughters not to be subject to the control of any husband,
but the same to belong to my said daughters and their children.    And
in case either of my said six children should depart this life with-
out leaving issue, then their part of my estate to be equally divided

between my other children, to be controlled in the same way as first above directed." The testator died in the year 1864. His wife, the life-tenant, died in 1898, without having intermarried. The son executed a deed, to his interest in certain described land which belonged to the testator at the time of his death, to the defendant in error, and died before the life-tenant, leaving children surviving her. The five daughters, on the same day the son executed his deed, also made deeds conveying all of their interests in the same property to the defendant in error, and each survived the life-tenant, with children surviving her, born after the testator's death. Plaintiffs in error brought an equitable petition against the defendant in error, praying for a construction of the will of their grandfather, John M. Carter, and for a joint and several recovery of whatever interests they were entitled to, under the will, in this land conveyed by their respective parents to the defendant in error; and that the land be sold and the proceeds be partitioned between the different owners thereof according to their respective interests therein. The petition after amendment, was dismissed on demurrer, the court holding that none of the plaintiffs were entitled to recover under the allegations of the petition. To this ruling the plaintiffs excepted.

1. In construing wills, as they rarely use exactly the same language, each case is to be determined on its own merits (*Cook* v. *Weaver*, 12 *Ga.* 47; *Olmstead* v. *Dunn*, 72 *Ga.* 850 – 7), and the intention of the testator is to be diligently sought for and followed, if consistent with law. Civil Code, § 3324; *Usry* v. *Hobbs*, 58 *Ga.* 33; *Bailey* y. *Ross*, 66 *Ga.* 363 – 4; *Morton* v. *Murrell*, 68 *Ga.* 145; *Hudgins* v. *Wilkins*, 77 *Ga.* 556. This law is that which existed at the death of the testator (*Hertz* v. *Abrahams*, 110 *Ga.* 707), and his intention only yields to the law when it clearly and decidedly conflicts therewith. *Williams* v. *McIntyre*, 8 *Ga.* 37. The intention of the testator must be gathered from the whole will. *Edmondson* v. *Dyson*, 2 *Ga.* 312; *Benton* v. *Patterson*, 8 *Ga.* 151; *Cook* v. *Weaver*, supra; *Robert* v. *West*, 15 *Ga.* 123 (4); *Felton* v. *Hill*, 41 *Ga.* 554 (2); *Tennille* v. *Phelps*, 49 *Ga.* 540; *Olmstead* v. *Dunn*, supra; *Gaboury* v. *McGovern*, 74 *Ga.* 140. All the attendant circumstances of the testator and his family are to be considered. *Cook* v. *Weaver; Williams* v. *McIntyre; Tennille* v. *Phelps; Olmstead* v. *Dunn*, above cited. And all divesting

clauses, especially as to remainders, are to be strictly construed, so as to vest the estate absolutely at the earliest possible period of time. 29 Am. & Eng. Enc. L. (1st ed.) 467 – 8, and note 2; *Bailey* v. *Ross*, 66 *Ga*. 364.

2. The words of the testator, devising the remainder, " In case of my said beloved wife not intermarrying, then in that event my will is that at her death that my whole estate be then equally divided between my six children, to wit: my five daughters, Lucinda, Almeda, Sarah Elizabeth, Teresa, and Thena Alieva, and my son Sanders Taylor Carter," standing alone, would undoubtedly give an absolute or indefeasible estate in remainder to each of the said children, which would vest in interest at the testator's death and in possession at the life-tenant's death. *Shipp* v. *Gibbs*, 88 *Ga*. 184. And the remainder share of a child who should die before the life-tenant would descend to that child's heirs at law, whoever they might be (Civil Code, § 3101), or vest in such child's assigns by his or her deed thereto, made during the life-tenancy. Ibid, § 3601. And the superadded words of the testator, "And in case either of my said six children should depart this life without leaving issue, then their part of my estate to be equally divided between my other children," do not change the vested remainder, previously and explicitly given to each child, into a contingent remainder to only those children of the testator who survive the life-tenant, but merely designate the *contingent event* upon which such remainder to each child may become divested prior to the time of its vesting in possession at the period of distribution — namely, at the death of the life-tenant — in favor of the testator's other children and remaindermen then living as *substituted devisees*. When we bear in mind that the entire estate given in remainder to the testator's six children was to be equally divided among them at the death of the life-tenant, and that each child's vested-remainder interest, by subsequent words, was simply made defeasible, upon the mere contingency of such child dying without leaving issue, in favor of the *others as survivors*, we then have the key to the intention of the testator, which is clearer than in devises to A. and upon *his* death to B., C., and D., and the survivors of them. The dying of a remainderman, in the case in hand, without leaving issue, which is the sole contingency upon which such remainderman's vested share, otherwise distributable to him or her at the death of the life-tenant,

is to be divested, can not be referred to a death before the testator, whereby the whole remainder is to vest in the other children and remaindermen as survivors at his death, because he fixed a later period — namely, at the death of the life-tenant — for the distribution, or vesting in possession of his whole estate among the remaindermen then entitled indefeasibly, and as the time when his "other children," and remaindermen, as survivors, were to be ascertained to take the share of a child dying previously without leaving issue living at the life-tenant's death ; and because the life-tenant, who was not incapacitated from taking the estate given to her, neither died nor renounced her life-interest before the testator's death, which events alone would have accelerated the vesting in possession of the remainder interest at the testator's death and fixed the persons then entitled thereto indefeasibly.    20 Am. & Eng. Enc. L. (1st ed.) 895; 29 Ibid. 489.    And it can not be made referable to the dying of either remainderman after the life-tenant, because, instead of *one division* taking place at *one* fixed period as the testator directed, there would then be partial divisions, occurring one after another, as often as a remainderman died after the life-tenant without leaving children, or all the remaindermen might die without leaving children, and, in that event, when the last child died the whole estate would have to revert to the testator's heirs at law.  This construction would not only prevent the free alienation of the property and violate the rule of the law that divesting clauses, especially as to remainders, must be strictly construed so as to absolutely vest the estate at the earliest possible period of time and not postpone the vesting of estates in possession indefinitely, but would simply *make* a will for the testator.    Hence, the irresistible conclusion is that the words, "dying without leaving issue," as applying to a divestment of any child's vested-remainder share, in favor of the other children of the testator, and remaindermen, as substituted devisees, clearly refer to a dying within the lifetime of the life-tenant, so as to vest the remainder in the whole estate indefeasibly at the death of the life-tenant, as the testator directed.    It is just the same as if the testator, as to his son's remainder interest, had said: "At the death of my wife, the life-tenant, my son is to have an equal share in my whole estate absolutely ; but should he die before the time I thus fix for him to have his share vested indefeasibly in possession, without leaving children in esse at that time, then, and then only,

I give his share to my other children and remaindermen who survive the said period of distribution."

A vested remainder may be absolutely or defeasibly vested. And "a vested remainder subject to a divesting contingency has, until the contingency happens, all the incidents of an indefeasible interest, and if the contingency never happens, the estate becomes absolute." 20 Am. & Eng. Enc. L. (1st ed.) 854. The vested-remainder share of the testator's son was subject to be divested, upon the sole contingency of the son dying without leaving issue in esse at the life-tenant's death, in favor of his sisters, and other devisees then living. This contingency never happened. Therefore, in consonance with the testator's intention and the soundest reason, there being no devise to the children of the son, the latter's vested-remainder share became absolute and indefeasible upon his dying before the life-tenant, leaving issue in esse at the life-tenant's death (Besant *v.* Cox, 6 Ch. Div. 604, which is directly in point), or upon his surviving the life-tenant, with or without children, which supports the immediately preceding principle. Ibid.; Barler *v.* Cocks, 6 Beav. 82; McGraw *v.* Davenport, 6 Porter (Ala.), 319; Williamson *v.* Chamberlain, 2 Stockton, 10 N. J. Eq. 373, approved in Baldwin *v.* Taylor, 37 N. J. Eq. 83; McCormick *v.* McElligott, 127 Pa. St. 230, s. c. 14 Am. St. Rep. 837, 17 Atl. Rep. 896, and the cases cited in the circuit judge's opinion in said Reporter; Lee *v.* Mumford, 44 S. W. Rep. 91, 19 Ky. Law Rep. 1585; Weakley *v.* Hanna, 51 S. W. Rep. 570, 21 Ky. Law Rep. 450; Forsyth *v.* Lansing (Ky.), 59 S. W. Rep. 854. And even if the will in this case had made the vested-remainder interest of the son defeasible by an express devise to his children in case of his death, his death would mean a dying within the lifetime of the life-tenant; and hence his children could not take under the express contingent devise to them if he survived the life-tenant, because his remainder share would then vest in him indefeasibly. *Bartlett* v. *Bartlett*, 33 *Ga. Supp.* 174, construing the third item with the fourth, fifth, and sixth items of the will in that case; *Bailey* v. *Ross*, 66 *Ga.* 354, 362—365, and the cases cited on the latter page; Hervey *v.* M'Laughlin, 1 Price, 264, 16 Revised Reports, 713; Galland *v.* Leonard, 1 Swanston, 161, 18 Rev. Rep. 44; Olivant *v.* Wright, 1 Ch. Div. 346; Vidal *v.* Verdier, 1 Speer's Eq. (S. C.) 402; Galway *v.* Price, 30 N. Y. Sup. 985. And the cases of *Usry* v. *Hobbs*, 58 *Ga.* 32; *Doty* v. *Wray*, 66 *Ga.* 153; *Lufburrow* v.

*Koch,* 75 *Ga.* 448; Clark *v.* Henry, L. R. 11 Eq. 222, 227—8; Bishop *v.* McClelland, 44 N. J. Eq. 450, 1 L. R. A. 552; Wolfe *v.* Nostram, 2 N. Y. 438—442; Fields *v.* Whitfield, 101 N. C. 305, together with 3 Jarman on Wills (R. & T. ed.), 611, and Smith on Ex. Int. § 658, also give light in support of the principles here discussed. The children of the testator's son take no estate under the will, either expressly or by implication; and the latter class of estates are not favored. *McCord* v. *Whitehead,* 98 *Ga.* 385. This rule as to estates by implication applies with especial force to the case at bar, as there is no intent whatever on the part of the testator to give his son a lesser estate than a remainder in fee in his whole share, which was only to be divested, in favor of the testator's other children and remaindermen, upon the contingency hereinbefore explained, which never happened. The existence of the son's children at the time of the death of the life-tenant, he having died before, simply fulfills one of the provisions in the testator's will, whereby the son's remainder share, which was defeasibly vested, would then become indefeasible. If he had made no deed to his remainder interest, his children in life at the time of the death of the life-tenant would have taken his then indefeasible remainder share by inheritance from him. But his deed, on account of his leaving children in esse at the death of the life-tenant, which then made his remainder absolute, passed that absolute interest to his grantee. This principle is upheld in *Chewning* v. *Shumate,* 106 *Ga.* 752—3; *Davis* v. *Hollingsworth,* 113 *Ga.* 210; *Oliver* v. *Powell,* 114 *Ga.* 592. It is only when the defeasible remainder interest of a testator's child, who dies before the life-tenant, is expressly given in that contingency to his children, that his deed made during the life-tenancy would not convey the absolute fee at the life-tenant's death as against his children surviving the latter period. Galway *v.* Brice, 30 N. Y. Sup. 985—6.

3. We are thus brought to a consideration of the remainder interests of the five daughters, who married after the testator's death and survived the life-tenant, with children then living. After first giving to these daughters, together with his son, each by name, a vested remainder in his whole estate, to be equally divided among them *at the death of the life-tenant,* the testator says: "My effects *thus going into the hands of my said daughters* not to be subject to the control of *any* husband, but the same to *belong to my said*

*daughters and their children.* And *in case either of my said six children should depart this life without leaving issue, then their part of my estate to be equally divided between my other children, to be controlled in the same way as first above directed."* The vital question here presented is, does this devise in remainder create an estate tail in the daughters, which would give them the fee under our act of December 21, 1821 (Cobb's Dig. 169), or does it create a tenancy in common between the daughters and their children born up to and living at the time of the vesting of the remainder in possession at the death of the life-tenant? The answer to this question depends upon whether the word " children," in the phrase "and their children," was used in the sense of a word of limitation, or not. There is no middle ground. We think that the testator clearly intended to create the estate last mentioned, and that such intention violated no rule of law in force at his death, or at any other time. If the devise had been of an immediate estate to vest in interest and in possession at the death of the testator, as directly, in the first place, to a daughter and her children (the daughter having no children when the will took effect), there could then be no doubt that such devise would create an estate tail in the daughter. One of the rules in Wild's case and its meaning is thus stated in 3 Jarman on Wills (R. & T. ed.), 174: " Where lands are devised to a person *and his children, and he has no child at the time of the devise,* the parent takes an estate tail ; for it is said, 'the intent of the devisor is manifest and certain that the children (or issues) should take, and as immediate devisees they can not take, because they are not *in rerum natura,* and by way of remainder they can not take, for that was not his (the devisor's) intent, for the gift is immediate; therefore such words shall be taken as words of limitation.'" The modification of this rule, as suggested by Jarman (Ibid. 177), so that children living at the death of the testator, when the will takes effect, would not be excluded as purchasers in an immediate devise in interest and possession at the testator's death to A. and his children, has been approved in this State, whereby such children and their parent would take as tenants in common. *Hoyle* v. *Jones,* 35 *Ga.* 40 ; *Gillespie* v. *Schuman,* 62 *Ga.* 252; *Ewing* v. *Shropshire,* 80 *Ga.* 384 – 5. As thus modified, and applying it to such immediate devises or grants in cases where A. has no child living at the testator's death, or at the execution

and delivery of the deed, the aforesaid rule, by which A. then takes
an estate tail, has been followed by many decisions of this court
and adopted into our code. Civil Code, § 3085 ; *Ewing* v. *Shrop-
shire,* 80 *Ga.* 374; *Estill* v. *Beers,* 82 *Ga.* 608 ; *Baird* v. *Brookin,*
86 *Ga.* 709, 712; *McCord* v. *Whitehead,* 98 *Ga.* 385; *Hollis* v.
*Lawton,* 107 *Ga.* 102.

If the devise were to A. for life, and after A.'s death to B. and her
children, without more, (B. having no children at the testator's
death) the devise might, though we are not called on by the facts in
the case at bar to say it necessarily would, create an estate tail in B.,
on the assumption that "children," in the phrase "and her children,"
unexplained by preceding, associated, or superadded words, was used
in the sense of issue generally, and therefore a word of limitation,
as held in *Butler* v. *Ralston,* 69 *Ga.* 485. Jarman in his work on
Wills (R. & T. ed.), 178, thus speaks of a principle which he
thought ought to apply to devises in remainder to A. and his chil-
dren, *simpliciter*: " If the literal terms of the rule in Wild's case
can be departed from in the manner suggested, in order to give
effect to its spirit, it would seem to follow that the parent would
never be held to take an estate tail if there were a child, who, ac-
cording to the established rules of construction, could have taken
jointly with the parent. Consequently, if the devise were future,
so that all children coming *in esse* before the period of vesting in
possession would be entitled, the rule which makes the parent ten-
ant in tail would (if at all) only come into operation in the absence
of any *such objects.* In Broadhurst *v.* Morris, the rule seems to have
been applied to a devise of this description, but this peculiarity in
the case does not appear to have attracted attention." And "this
peculiarity in the case" was not considered in our own case of *But-
ler* v. *Ralston.* The principle thus referred to by Jarman is upheld
in the recent case of Mitchell *v.* Mitchell, 73 Conn. 303, 47 Atl.
325, and is intimated to be correct in the later case of Childers *v.*
Logan, 65 S. W. 124, 23 Ky. Law Rep. 1239. But if this principle is
not applicable in cases like *Butler* v. *Ralston* (and we do not now
hold that it is), such cases are no authority in the case at bar, where
the will contains associated and superadded words explaining the
sense in which the word "children" was used. In *Gaboury* v. *Mc-
Govern,* 74 *Ga.* 146, the case of *Butler* v. *Ralston* is expressly re-
ferred to and thus distinguished: " It is sufficient to reply that . .

there were no superadded words to show that the maker of the instrument intended that the words used should be construed to be words of purchase and not of limitation." The decision in *Butler* v. *Ralston* itself fully recognizes the principle that the word "children" in a devise to A. and his children can be shown to be a word of purchase by explanatory words in other parts of the will. It can- not be questioned, certainly in this State, that words of limitation in one particular clause of a will or deed, which, standing alone, create an express estate tail, under either the rule in Wild's case or that in Shelley's case, may be explained by other and superadded words in the instrument to mean a word of purchase, which will prevent an estate tail. *Dudley* v. *Mallery,* 4 *Ga.* 61 – 63 ; *Benton* v. *Patterson,* 8 *Ga.* 151 – 2; *Kemp* v. *Daniel,* Ib. 385, 387 ; *Dudley* v. *Porter,* 16 *Ga.* 615 – 619; *Williams* v. *Allen,* 17 *Ga.* 81 – 2 ; *Sharman* v. *Jackson,* 30 *Ga.* 224; *Gaboury* v. *McGovern,* 74 *Ga.* 142 – 147. As is said in *Benton* v. *Patterson,* which exemplifies the rulings in the other cases, " The whole will must be considered together, and it will not do to rest the construction upon any particular clause." The principle referred to in 3 Jarman on Wills (R. & T. ed.), 239, that a mere limitation over upon a definite failure of issue at the death of the first taker will not explain the word "issue" in the antecedent devise to A. and his issue, if A. has no issue, but will engraft a contingency upon the estate first devised, clearly applies to such devises which take effect in possession at the testator's death. In England such devises give A. an estate tail, with remainder over expectant upon the happening of the contingency (Ibid.) ; and if only personalty is bequeathed, A. takes the fee, subject to be divested in favor of the executory legatees upon his dying without a child. Lyon *v.* Mitchell, 1 Madd. 467. The English rule as to personalty in such cases has been followed in Georgia as to realty also, and we have an illustration of this principle in the case of *Davis* v. *Hollingsworth,* 113 *Ga.* 210. Yet, even in such cases, the Vice-Chancellor in Lyon *v.* Mitchell, supra (p. 481), said that the extent of the estate given under the first devise is to be governed by the words in the limitation over, "where they bear upon, and unite with, and tend to affect the construction of the prior words, and which in many cases may enable us to come to a conclusion respecting it." He also said (pp. 472 – 3) that a devise to A. and his issue as tenants in common would be another

mode of showing a legal intention on the part of the testator not to create an estate tail; but we think this would apply to estates vesting in possession at some period after the testator's death, rather than at his death.

There are doubtless cases which hold that the principle last mentioned above by Jarman also applies where there is a remainder to A. and his issue, or heirs of his body, or children (A. having none), with a naked limitation over at his death, whenever that might occur, without issue or children; for, in such cases, death would not be confined to a dying before the life-tenant — there would be no substituted devisees to take the remainder indefeasibly at the death of the life-tenant, and therefore no children of A. who could take an estate in common with him when the life-estate terminated. That courts will lay hold of any legitimate facts or words to uphold the intention of the testator not to create an estate tail is also shown in the distinction made between an immediate devise in possession to A. and his children and a remainder to A. and his children, without a gift over, and A., in each case, has a child living when the will was made or the testator died. In an immediate devise (that is, to take effect in possession at the death of the testator) to A. and his children, and A. has a child living, A. and this child would take as joint tenants in England, under one of the rules or resolutions in Wild's case (6 Coke Rep. 17, 18; 3 Jarman on Wills (R. & T. ed.), 179); and as tenants in common in Georgia. *Gillespie* v. *Schuman,* 62 *Ga.* 252; *Ewing* v. *Shropshire,* 80 *Ga.* 384 – 5. After-born children would be excluded. Ibid. The latter children, being in rerum natura, could not acquire the legal title to an immediate estate in possession, and they could not take a remainder, for such was not the devisor's intent. On the other hand, if the devise is to A. for life, and at A.'s death to B. and her children, and B. had a child living when the will was made or the testator died, not only that child, but all other children born up to and living at the death of the life-tenant would take the remainder jointly or in common with their parent. Oates d. Hatterley *v.* Jackson, 2 Strange, 1172; Annable *v.* Patch, 3 Pick. (Mass.) 363. This last ruling is made independent of any rule in Wild's case. It is based upon the fact that as there was a child in life when the will was made, or the testator died, he intended all children of B. to take as purchasers when the remainder vested in possession, and that this

intent is upheld by the well-known rules of law that a remainder to unborn children is legal, and that all children born up to and living at the time fixed for the vesting of the remainder in possession are entitled to take as purchasers. Even in England, where the intention of the testator is presumed in favor of the creation of an estate tail, the courts in cases of a remainder to A. and his issue, or children (A. having no child when the will was made or the testator died), give effect to other words in the will to restrict the word "issue" or "children" to a word of purchase. In Hockley v. Mawbey, 3 Bro. Ch. 82, the devise was to the testator's wife during her life; at her death to the testator's son and to his issue lawfully begotten, or to be begotten, to be divided among them as he (the son) thought fit, and if the son died without issue, then to the children of the testator's sisters. The Lord Chancellor said: "He [the testator] did not mean the estate to go as an estate tail, but that the children should take distributively, in which case they must take as purchasers; and the consequence is that Richard [the son] took only an estate for life. . . In order to take they [the children] must be alive at the death of Richard [the son]. . . It is sufficient that the division must take place *at the death of Richard [the son]*, which is within the rules,"—that is, as against a perpetuity. If it had been possible under the terms of the will in Hockley v. Mawbey to restrict children of the son to those living *at the life-tenant's death*, when the son and his children, if any, would then take the remainder indefeasibly, could a reasonable doubt exist that the court would have held that the remainder absolutely vested in possession in the son and his children then living? We think not, because such devise including the children would not only be within the rule showing no perpetuity, but the children would be in existence to share in the division of the remainder indefeasibly *at the life-tenant's death*. And such a construction would be more readily adhered to in this State, where, as held in *Dudley* v. *Mallery, 4 Ga. 62, Benton* v. *Patterson, 8 Ga. 151, Robert* v. *West, 15 Ga.* 145 – 6, and *Dudley* v. *Porter, 16 Ga. 616,* the intention of testators is not to be presumed in favor of the creation of estates tail.

In the case at bar, the words of the testator, associated with the devise in remainder to his daughters, to belong to them and their children, and the superadded words immediately subjoined thereto show beyond all doubt that the word "children" was used by him

as a word of purchase, which utterly precludes an estate tail in the daughters. The testator first provides that *at the death of his wife, the life-tenant,* his *whole estate* is to be *equally divided* among his six children, one son and five daughters, whom he specifically names. Then he adds :. " My said effects thus going into the hands of my said daughters [that is, at the death of the life-tenant] not to be subject to the control of *any husband,* but the same *to belong to my said daughters and their children."* The testator here evidently meant that the property should *belong* to his daughters and their children *living at the life-tenant's death,* for the distributive word " belong," which is a word of ownership, applies to the children as well as to their mothers, and the death of the life-tenant is the time fixed by his preceding words for this distribution of his whole estate to be made *indefeasibly.* " The primary definition of the word ' belong ' is to be the property of." 3 Am. & Eng. Enc. L. (2d ed.) 915. " To be the property of " the children, they must take as purchasers; and the mode of their taking in this State would be in common with their mothers. The devise, then, down to this point, is certainly as strong as one made in remainder to A. and her children as tenants in common ; and "the provision that they should take as tenants in common shows very distinctly that the testator was contemplating something very different from an estate tail." Strong *v.* Goff, 11 East, 671. Moreover, the legal estate in remainder is not devised directly to his daughters and their children. On the contrary, it goes into the hands of the daughters, at the death of the life-tenant, to belong to them and their children. These words create a trust and make the daughters trustees for their children, if any. Civil Code, § 4138 ; 27 Am. & Eng. Enc. L. (1st ed.) 3, and note 3 ; *Gordon* v. *Greene,* 10 *Ga.* 435 (6), 441. The will made provision for the daughters to hold the legal estate of their own portions, as well as the portions to belong to their children, free from the control of their husbands. They were capable of acting as trustees for their children. 27 Am. & Eng. Enc. L. (1st ed.) 16, 20. And even if they were incompetent, for any reason, to act as such trustees, a court of equity would appoint trustees to execute the trusts. Ibid. ; Civil Code, § 3179. A trust for unborn children to take in remainder is legal, just as a remainder for unborn children without a trust is legal. And the trust would continue executory after the termination of the life-estate only until the children be-

came of legal age, when the law itself would execute the trust and divide the property without any act on the part of the trustee. The fact that the husbands of the testator's daughters, in *Toole* v. *Perry*, 80 *Ga.* 681, were made trustees of the remainders devised to the daughters and their children, was one of the reasons commented on in *Baird* v. *Brookin*, 86 *Ga.* 716, for holding that "children," in *Toole* v. *Perry*, was used as a word of purchase. Such reason certainly applies with much greater force in the case at bar, where the property is expressly directed to go into the hands of the daughters themselves at the death of the life-tenant, to belong to them and their children, which, as best comporting with reason and the intention of the testator, means a trust for the daughters' immediate descendants in esse at the death of the life-tenant, when the testator's whole estate was to be divided indefeasibly, and not a trust for the daughters to hold for their issue in infinitum.

The words, then, of the testator thus far alone strongly indicate, if they do not conclusively show, that when he made his will " he had in mind a class of persons [to wit, children of his daughters] who might thereafter be born " (*Hollis* v. *Lawton*, 107 *Ga.* 106), and within the period, too, fixed by him for the distribution of his entire property in remainder indefeasibly. But, to put his meaning beyond the pale of doubt, the testator shows by his superadded words how and to whom any such remainder share shall go at the life-tenant's death, *by substitution*, if either of his daughters should die *before the life-tenant, without a child surviving the life-tenant's death*. Immediately subjoined to the devise in remainder, to go into the hands of his daughters at the death of the life-tenant, to belong to them and their children, he says : " And in case either of my said six children should depart this life [that is, *before the life-tenant*] without leaving issue [that is, *in esse at the death of the life-tenant*], then their part of my estate to be equally divided between my other children," that is, the testator's other children *living at the death of the life-tenant*, which is the period fixed by the testator for the distribution of his whole estate indefeasibly, as shown by the construction hereinbefore placed upon this clause of the testator's will, in deciding the nature of his son's remainder interest. And then the testator makes the final and important provision that any remainder share thus taken by his other children, *as substituted devisees*, at the life-tenant's death is " to be controlled

in the same way as first above directed." That is, just as the remainder shares to the son and to the five daughters were previously given, down to the divesting clause, to wit: If his son survived the life-tenant, *with or without children,* he should *then* take an equal part of any divested remainder share by substitution, and also his own specific remainder share *absolutely ;* if any daughter survived the life-tenant, *without children,* she should *then* take an equal part of any divested remainder share by substitution, and also her own specific remainder share, *absolutely,* although children might afterwards be born to her; and if any daughter survived the life-tenant, *with children,* she should *then* receive into her hands an equal part of any divested remainder share by substitution, and also the specific remainder share first devised to go into her hands at the life-tenant's death, to belong to her and her children (that is, her children then living) *absolutely.* No person, who was intended by the testator to take, could by law take any part of his property after its division, or the life-tenant's death, for that division was to be of the testator's whole estate indefeasibly. The devises, then, in remainder to each daughter, to belong to her and her children, are to a collection of persons, uncertain in number, to be ascertained at the death of the life-tenant; and whether such persons be called a class per se or not, the legal conclusion which we have reached would necessarily follow. " A number of persons are popularly said to form a class when they can be designated by some general name as ' children,' ' grandchildren,' 'nephews,' but in legal language the question whether a gift is one to a class depends, not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." 1 Jarman on Wills (R. & T. ed.), 534. And while a remainder to A. and her children, simpliciter, (A. having none when the testator died) may not be a devise to a class, yet a devise in remainder to A. and her children *living at the life-tenant's death, or of an estate at an earlier period of distribution after the testator's death,* may, in legal effect, be called one to a class. Mitchell *v.* Mitchell, 73 Conn. 303, 47 Atl. 326. And all living at the period of distribution will take equally, unless

otherwise directed by the testator. Ibid. One of the principal objections sometimes urged to construing " children," in such cases, as a word of purchase, namely, that the issue of the children would not take upon the latter's death before the period of distribution, finds no place or lodgment in the case before us, for two reasons: First, any divested remainder share goes to the testator's own children and his daughters and their children, if any, *by substitution*, at the life-tenant's death, neither great-grandchildren nor other remote kindred being the objects of his bounty. Secondly, in a case of substitution, like this one, the non-existence of a daughter and her children at the death of the life-tenant, though she might have had children before that time, would not pass that particular share to the heirs of such daughter or children, because the testator himself designates the persons who shall take at the life-tenant's death as substituted devisees.

It is impossible to hold that the testator's daughters take an estate tail, which would result in giving to them the absolute fee under our act of December 21, 1821, because such ruling could only be made by construing the devise as a simple and naked one to A. and her children, or issue, generally. And we can not hold that the daughters take an estate tail, whereby, under the act of 1821, the fee given would be made determinable upon a mere limitation over on a definite failure of issue, if a daughter died at any time without a child, because that construction would include a postponement of the vesting of the remainder in possession absolutely *beyond* the life-tenant's death; and because there is no limitation over in this case, but a mere substitution, to take effect at the death of the life-tenant, if at all. Therefore the logical and legal conclusion is, that the remainder shares to the daughters go into their hands at the death of the life-tenant, to belong to them and their children then living as tenants in common; and that such remainder shares, which vested in interest in the daughters at the testator's death, consequently opened to take in their said children at the period of distribution. We think this ruling harmonises the whole will, and also upholds the rule of law favoring the vesting of remainders indefeasibly at the earliest possible period of time, which the intention of the testator in this case manifestly follows. We may add that "this belongs to a class of cases where one case seldom rules another, for the reason that each will must be interpreted by itself,

and does not depend to any great extent on prior interpretations of other wills." The principles in the case of *Gaboury* v. *McGovern*, 74 *Ga.* 133, explaining the word "issue" in a prior clause to the testator's unmarried daughter *and her issue* during her life by the superadded words to mean children and a word of purchase; and in *Toole* v. *Perry*, 80 *Ga.* 681, showing that a devise in remainder to the testator's daughter *and her children* included children born after the testator's death, and also by a second marriage, and living at the period of distribution, on the strength of subsequent words presuming that the testator meant children by her present or any future husband, apply as authority in the case under consideration. These cases are recognized as correct in *Hollis* v. *Lawton*, 107 *Ga.* 106, and are therein distinguished from the facts in that case, which was the grant of an immediate estate in possession to A. and her children, without any explanatory words; and it was there correctly held that no child born after the estate vested in possession was entitled. In Blankenbaker *v.* Woodruff, 97 Ky. 276, 30 S. W. 614, the testator gave a life-estate to his wife, with remainder to three daughters by name (*one of them being unmarried*) to be equally divided among the daughters upon the widow's decease, "for their benefit *and the benefit of the heirs of their natural bodies*, up to the age of thirty years on the part of each of said heirs of their natural bodies." It was held that the latter words explained the preceding words, "heirs of their natural bodies," to mean children in esse at the life-tenant's death, and that therefore each daughter took a fee-simple estate in remainder jointly with her children, if she had any, upon the death of the life-tenant.

Among the cases holding that a devise to A. for life, with remainder to B. and his children (B. having no child at the time of the devise), and, if B. dies without children or issue, then to C., gives B. an estate tail, are Broadhurst *v.* Morris, 2 Barn. & Ad. 11, Wood *v.* Baron, 1 East, 259, Moore *v.* Gary, 149 Ind. 51, 48 N. E. 452, and Parkman *v.* Bowdoin, 1 Sumner (C. C. U. S.), 359. They are, however, all clearly distinguishable in their facts from the case at bar, which, among other things, is not, like them, a case of a limitation over, but of a substitution, pure and simple, to take effect, if at all, at the life-tenant's death. In Broadhurst *v.* Morris, the remainder was to B. and his lawfully begotten children forever, and in default of such issue at his decease, to C. The contention

was that the limitation over should be construed as if a comma had been placed after "issue," and, therefore, as upon an indefinite failure of issue. The clause is so construed by Judge Story in Parkman v. Bowdoin (p. 369). And this court construed the clause to mean an indefinite failure of issue in *Wiley* v. *Smith*, 3 *Ga.* 565. The English court, without apparently considering the principle as to what persons would be entitled at the time for the remainder to vest in possession, and there being nothing to show that the dying of B., the remainderman, was referable to a dying within the lifetime of the life-tenant, simply delivered a four-line opinion, that B. took an estate tail. In Wood v. Baron, the remainder was to B., to hold as a place of inheritance, to her and her children or her issue, and if she died leaving no child or children, or if the latter should die without issue, then to C. Lord Kenyon thought the words in the limitation over meant upon an indefinite failure of issue, and distinguished it from several cases he cited in which the words were different and upon a definite failure of issue, but said the court would consider it. Afterwards the court certified, in less than four lines, that B. took an estate tail, manifestly because, as Lord Kenyon had intimated, the words in the limitation over imported an indefinite failure of issue under the common-law rule of construction, and this was no doubt the reason, inasmuch as B. had a child in life when the will was made and when the testator died. In Moore v. Gary, the remainder was to B. and his issue, being his own children lawfully begotten forever, and upon his dying without issue, that is, without heirs being his own children lawfully begotten, living at his death, to C. The court held that both the antecedent and superadded clause meant an indefinite failure of issue, and therefore that B. took an estate tail. In Parkman v. Bowdoin, the remainder was to B. and to his lawfully begotten children in fee simple forever; but in case he should die without children lawfully begotten, to C. The opinion was rendered by Justice Story, and is by far the best of its kind of which we have knowledge. Like the other cases here distinguished, there was nothing in that case confining the death of B. within the lifetime of the life-tenant. Justice Story spoke of a remainder being an immediate estate, but he overlooked the wide distinction and consequent results between a remainder vested in interest and a remainder vested in possession. And he finally held that the limitation over meant an indefi-

nite failure of issue, which made the word "children" in the preceding clause, "and his children," retain its original sense as a word of limitation, and gave B. an estate tail. This construction, which was based on the common-law rule existing prior to the English wills act that went into effect on January 1, 1838, is contrary to what would be decided in this State since our act of 1854, which changed the meaning of all such phrases into a *definite* failure of issue; and therefore Parkman *v.* Bowdoin, as well as the preceding cases distinguished, would be no authority in this State as to a will made since said act, even on an identically phrased or worded will. There are other cases where estates were given to B. and his children, to vest in B. at twenty-one years of age, and if he died before twenty-one, to C., in which it was held that B. took an estate tail, as in Davie *v.* Stevens, 1 Doug. 321. Besides being wholly unlike the case at bar, a reading of that case will show that B. was never even married when the estate vested in him in possession at the age of twenty-one. From what we have said about these cases, it is seen of what little value precedents are in construing a will, unless the facts are precisely or substantially alike, and the cases decided do not omit the consideration of well-established and apposite rules of construction.

It follows that in the case now in hand a deed executed by a daughter of the testator, which conveyed to another all her interest in described realty which belonged to the testator at his death, did not affect the interest therein of her children who were in life when the life-tenant died. From the foregoing, it follows that the trial judge correctly held that the petition set forth no cause of action in behalf of the plaintiffs who are the children of the testator's son, but that he erred in ruling that the other plaintiffs, who are the children of the daughters of the testator, were not entitled to recover, under the allegations of the petition.

*Judgment reversed. All the Justices concurring, except Little and Lewis, JJ., absent.*